**Mary J. GAETANO, Plaintiff,**

v.

**PAYCO OF WISCONSIN, INC., Defendant.**

**Civ. No. N–89–220 (TFGD).**

United States District Court, D. Connecticut.

June 20, 1990.

Joanne S. Faulkner, New Haven, Conn., for plaintiff.

Lewis Lerman, Susan Chambers, Ann H. Rubin, Carmody & Torrance, New Haven, Conn., for defendant.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

DALY, District Judge.

Plaintiff, Mary Gaetano, alleges that the defendant, Payco of Wisconsin, Inc. ("Pay-

co"), violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692o, in its efforts to collect a credit card debt of $6,017.67 on behalf of Chase Manhattan Bank, N.A. ("Chase"). Both the plaintiff and the defendant seek summary judgment on plaintiff's claims.

## Summary Judgment Standards

Viewing the record in the light most favorable to the non-moving party, summary judgment is appropriate under Fed.R.Civ.P. 56(c) when the evidence offered raises no genuine disputes of material fact and the moving party is entitled to summary judgment as a matter of law. *Cinema North Corp. v. Plaza at Latham Associates*, 867 F.2d 135, 139 (2d Cir.1989). To defeat such a motion, the non-moving party must offer concrete evidence tending to show that its claim is more than fanciful, *see id.;* Fed.R.Civ.P. 56(e); or, alternatively, must show that the movant is not entitled to summary judgment as a matter of law.

■ This burden remains the same even when cross-motions for summary judgment have been filed. *Knowles v. Postmaster General*, 656 F.Supp. 593, 597 (D.Conn. 1987). The Court must consider each party's motion on its own merits, drawing all reasonable inferences from the record against the party's whose motion is under review. *Schwabenbauer v. Board of Educ.*, 667 F.2d 305, 314 (2d Cir.1981). Since the facts of this case are straightforward, the Court will review them in the context of its evaluation of the legal merits of the pending motions.

## Discussion

### A) The FDCPA

■ The FDCPA prohibits, *inter alia,* a debt collector from employing "false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To determine whether a collection demand is misleading or deceptive, courts employ the "least sophisticated consumer" standard—inquiring whether the least sophisticated debtor would likely be misled or deceived by the collection notice at issue. *Swanson*

*v. Southern Oregon Credit Serv., Inc.,* 869 F.2d 1222, 1225 (9th Cir.1988); *see also Exposition Press, Inc. v. F.T.C.,* 295 F.2d 869, 873 (2d Cir.1961) ("look not to the most sophisticated [consumer,] but to the least"). Since the FDCPA is a strict liability statute, the plaintiff need only show one violation of its provisions to be entitled to summary judgment. *Colmon v. Payco–General American Credits, Inc.,* 774 F.Supp. 691, 693 (D.Conn.1990); *Riveria v. MAB Collections, Inc.,* 682 F.Supp. 174, 175–76 (W.D.N.Y.1988).

### B) Plaintiff's Summary Judgment Motion

#### 1) *False Statements*

■ Plaintiff's first claim is that defendant falsely stated in its second collection notice that "[a]n investigation has disclosed that you are employed...." Plf.Exh. B. By so stating, the plaintiff argues, defendant violated section 1692e(10)'s prohibition against making false representations in order to collect a debt or to obtain information about the consumer. Plaintiff contends that defendant's notice was "intended to smoke her out by having her call, to confirm or deny, or to plead with defendant not to contact her employer." Plf.Mem. at 5 (2/27/90).

The undisputed record indicates that, pursuant to the terms of the collection agreement, on or about November 3, 1988 Chase provided the defendant with information indicating that plaintiff "was employed by Gutkin Caterers, Whaley [sic] Avenue, New Haven, Connecticut and that the telephone number of Gutkin Caterers was 203/562–6185." Roznik Aff. at ¶ 5. Also undisputed is that defendant tried calling that number on November 15, 1988 only to find that it was not in service at that time. *Id.* at ¶ 7. On November 16, 1988, the defendant then sent to plaintiff its second collection notice including therein the sentence quoted above.

Plaintiff contends that the statement was untrue because no investigation was undertaken and because defendant's information was "merely that [plaintiff] had been employed." Plf.Mem. at 1 (3/28/90). The

Court disagrees. The defendant did investigate plaintiff's employment status. That defendant gleaned its information from Chase pursuant to standard procedures established in the collection agreement does not detract from this fact. Additionally, defendant investigated by attempting to verify the employment by telephoning the number given it for Gutkin Caterers. The defendant did not violate the FDCPA by failing to state that Gutkin Caterer's phone was not in service at the time the defendant attempted to reach the employer. Significantly, nor did defendant state that it had verified plaintiff's place of employment. Simply because the alleged employer's phone was not in service at the time of the call, did not mean that Gutkin Caterers no longer employed the plaintiff. In the absence of evidence indicating that the defendant knew that plaintiff no longer worked for that caterer or that defendant knew that the caterer never existed or had gone out of business, the Court finds no violation and this claim is dismissed.

 Apparently [1], plaintiff also claims that the defendant violated the FDCPA by threatening to sue when it had no intention or ability to sue and by falsely stating that it would use "ALL APPROVED MEANS AT OUR COMMAND TO COLLECT DEBTS" when it did not intend to do so.[2] Plf.Exh. A. She also asserts that the following statements threaten litigation which the defendant did not intend to pursue: 1) "WE ARE ENTITLED TO USE, AND WE INTEND TO USE, ALL APPROVED MEANS AT OUR COMMAND TO COLLECT DEBTS ... AND ANY INFORMATION WE OBTAIN WILL BE USED AS A BASIS TO ENFORCE COLLECTION OF THE DEBT"; and 2) the "ACCOUNT HAS BEEN GIVEN TO US FOR IMMEDIATE ACTION." Plf.Exh. A.

The FDCPA prohibits debt collectors from threatening action that cannot legally be taken as well as threatening action that they do not intend to undertake. 15 U.S.C. § 1692e(5). Also, forbidden is the use of any false representation or deceptive means to collect or to attempt to collect a debt. 15 U.S.C. § 1692e(10). Plaintiff argues that the defendant violated both of these provisions.

Plaintiff's argument that the defendant violated the first of these provisions misses the mark in two respects. First, plaintiff has offered no evidence, other than counsel's bald assertions, regarding defendant's intent as to any future actions. Second, and more importantly, the Court does not construe the quoted language as threatening litigation. Significantly, the quoted passages contain no reference, either direct or implicit, to suit, lawsuit, legal action, or litigation. Though plaintiff relies on *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22 (2d Cir.1989), that case is distinguishable from the one at bar. In *Pipiles*, the *second* notice sent to the debtor stated:

> Notice is Hereby Given That this Item Has Already Been Referred for Collection Action; We Will At Any Time After 48 Hours Take Action As Necessary And Appropriate To Secure Payment In Full, [and] Pay this Amount Now If Action Is To Be Stopped.

*Id.* at 25. Not only is the substance of these statements in many respects more harsh than those made to plaintiff here (and though the debt collector there conceded that the only further action it contemplated was telephone contact), *Pipiles* differs materially from the case at bar because the consumer had already received an initial collection notice from the debt collector and the second notice given clearly threatened more drastic consequences for non-payment (*i.e.*, legal action). *See id.* ("clear import of the language, taken as a

---

1. For the record, the Court notes that plaintiff's presentation of the claims upon which she seeks summary judgment is often difficult to decipher.

2. Plaintiff also contends that defendant's statement that it is a "professional" collection agency on the back of the first collection notice is both false and intimidating. For the reasons stated in *Colmon,* at 693, this Court disagrees. This Court finds that the reference to "professional" is not intimidating or false and merely notifies the debtor that the defendant is in the business of debt collection.

whole, is that *some* type of legal action has already been or is about to be initiated and can be averted from running its course only by payment"). For these reasons, the Court dismisses plaintiff's claims that the defendant threatened, without intent, to sue and thereby also falsely represented its intentions as a means of debt collection.

■ Granting summary judgment on plaintiff's other claim, that defendant falsely stated it would use "ALL APPROVED MEANS AT OUR COMMAND TO COLLECT", is inappropriate. To support this claim, plaintiff argues that the defendant had over two dozen collection letters available, which it did not intend to use and which establishes that defendant made false representations in order to collect a debt. Other than counsel's bald assertion, plaintiff has not offered any evidence supporting the number of collection letters defendant had available for use. Nor has she offered any evidence of defendant's intent with respect to the statement at issue. In similar fashion, defense counsel also makes bald assertions regarding defendant's intent and the number of collections letters. Given the failure of the parties to offer evidence, *see* Fed.R.Civ.P. 56(c), supporting counsels' arguments, this claim must await trial and summary judgment is denied.

### 2) *Statutorily Required Notices*

■ Plaintiff also contends that the defendant failed to comply with several FDCPA notice provisions. The first of these requires that the debt collector "disclose clearly in all communications made to collect a debt or to obtain information about a consumer, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11).

On November 9, 1988 the defendant sent a demand for payment to the plaintiff, indicating in the second paragraph on the reverse side of the demand that:

WE ARE A PROFESSIONAL COLLECTION AGENCY ATTEMPTING TO COLLECT A DEBT. WE ARE ENTI-

TLED TO USE, AND WE INTEND TO USE, ALL APPROVED MEANS AT OUR COMMAND TO COLLECT DEBTS WHICH HAVE BEEN REFERRED TO US AND ANY INFORMATION WE OBTAIN WILL BE USED AS A BASIS TO ENFORCE COLLECTION OF THE DEBT.

Plf.Exh. A.

Plaintiff argues that the least sophisticated consumer would not be able to divine the required disclosure in the paragraph because of the use of "non-required verbiage" and "extraneous intimidating language." Once again, the Court disagrees and holds that the disclosure was "clearly" conveyed within the contemplation of the FDCPA.

Plaintiff concedes that the statement made contains the required notice. Therefore, this case is distinguishable from those finding liability for the failure to do so. *See, e.g., Traverso v. Sharinn,* N–88–446(WWE), 15 CLT No. 39 (D.Conn. Sept. 15, 1989). The section 1692e(11) notice is designed to give a debtor notice that she is dealing with a collection agency, attempting to collect a debt, and which will use any information it obtains for that purpose. Defendant's notice comports with that purpose and the defendant's decision not to use the statutory language does not obfuscate the basic message to be conveyed.[3] *See Emanuel v. American Credit Exchange,* 870 F.2d 805, 808 (2d Cir.1989) ("There is no requirement that the letter quote verbatim the language of the statute."). As a matter of law, plaintiff is not entitled to summary judgment on this claim. Rather, the entry of summary judgment in defendant's favor is warranted. Therefore, this claim is dismissed.

■ Plaintiff also argues that the defendant failed to meet its statutory obligations by obscuring what is commonly referred to as the "debt validation notice." More specifically, plaintiff contends that the defendant failed to comply with that part of 15

---

**3.** Whether this portion of the letter violated section 1692e(5)'s prohibition concerning a

"threat to take any action that cannot legally be taken" will be considered below.

U.S.C. § 1692g(a) [4], which provides that the debt collector must send the consumer written notice advising that debt will be assumed to be valid unless the consumer notifies the debt collector, within thirty days of the receipt of such notice, that the validity of the debt, or any portion thereof, is disputed.

Across the top of the front page of defendant's first collection notice in large, red, boldface type were the words "DEMAND FOR PAYMENT". Plf.Exh. A. Slightly more than one-third of the way down the front page, also in red, (slightly smaller) boldface type are the words "THIS IS A DEMAND FOR IMMEDIATE FULL PAYMENT OF YOUR DEBT". In the middle of the page is the following statement: "YOUR SERIOUSLY PAST DUE ACCOUNT HAS BEEN GIVEN TO US FOR IMMEDIATE ACTION. YOU HAVE HAD AMPLE TIME TO PAY YOUR DEBT, BUT YOU HAVE NOT. IF THERE IS A VALID REASON, PHONE US AT (414) 784-6565 TODAY." *Id.* Immediately below that statement in black, boldface type are the words, "IF NOT, PAY US—NOW". *Id.* In roughly the bottom third of the front page, in purported 126 point type, is the word "NOW". *Id.* Finally, in the bottom inch of the page, in white letters set off by a dark red background is the statement: "NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION". *Id.*

On the reverse side of this document in the second paragraph (below the one containing the § 1692e(11) notice) in gray type against a white background is the statement:

4. In its entirety, 15 U.S.C. § 1692g(a) provides: Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—(1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a

THIS DEBT WILL BE ASSUMED TO BE VALID BY THE COLLECTOR UNLESS THE CONSUMER, WITHIN THIRTY DAYS AFTER RECEIPT OF THIS NOTICE, DISPUTES THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF.

*Id.* Eight days after defendant sent its first collection notice to plaintiff, it sent her a second notice, omitting any reference to the validation notice, and demanding that plaintiff "make payment in full today or phone (414) 784-6565." Plf.Exh. B.

The debt validation notice is designed to fulfill congressional intent to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S.Rep. No. 382, 95th Cong.2d Sess. 4, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1699. Though the statute does not require that the debt validation language be of a particular format, type size, location, or conspicuousness, *see Blackwell v. Professional Business Services*, 526 F.Supp. 535, 538 (N.D.Ga.1981), courts have held that a debtor cannot satisfy its requirements simply by timely stating the requisite language in its collection notice.

The statute is not satisfied merely by inclusion of the required debt validation notice; the notice Congress required must be conveyed effectively to the debtor. It must be large enough to be easily read and sufficiently prominent to be noticed—even by the least sophisticated debtor. [*Baker v. G.C. Services Corp.*, 677 F.2d 775, 778 (9th Cir.1982)]. Furthermore, to be effective, the notice must not be overshadowed or contradicted by

statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

other messages or notices appearing in the initial communication from the collection agency. *E.g., Thomas v. National Business Assistants, Inc.,* No. N–82–469 (D.Conn.1984) ("inconspicuous and grossly overshadowed" notice did "not properly notify recipients of their validation of debt rights"); *Ost v. Collection Bureau, Inc.,* 493 F.Supp. 701, 703 (D.N.D.1980) (communication must not be designed to "evade the spirit of the notice statute, and mislead the debtor into disregarding the notice").

*Swanson,* 869 F.2d at 1225.

Furthermore, "[i]f the debt collector wishes to place the validation of debt language on the back of its 'initial communication,' then some clear reference to that language must appear on the face of that document." *Ost,* 493 F.Supp. at 703; *accord Riveria v. MAB Collections, Inc.,* 682 F.Supp. 174, 177 (W.D.N.Y.1988) (relying in part on *Gambardella v. G. Fox & Co.,* 716 F.2d 104, 111 (2d Cir.1983)).

Despite plaintiff's contrary contention, the defendant's initial communication clearly indicates to the reader that the reverse side of the first collection notice contains important information warranting attention. Nor is the Court persuaded that the other language on the front of the collection notice or the first paragraph on the reverse side, when examined through the eyes of the least sophisticated consumer, obscured either the notice to see the reverse side of the document or the debt validation notice itself. *See Colmon,* at 694–95 (involving a collection notice nearly identical to the one at bar).

The Court is troubled, however, by: 1) the defendant's statement in the initial collection notice that "IF THERE IS A VALID REASON [YOU HAVE NOT PAID], PHONE US AT (414) 784–6565 TODAY"; and 2) the fact that eight days after the initial communication the defendant sent another collection notice to plaintiff, lacking any debt validation notice or reference to the notice initially given, and stating, *inter alia,* "MAKE PAYMENT IN FULL TODAY OR PHONE (414) 784–6565." Plf. Exh. B. The *Colmon* court was presented

with almost the same dilemma and rejected the contention that these facts contradict and obscure the debt validation notice. It so held focusing on both the fact that no harm was threatened if payment was not made prior to the expiration of the thirty-day validation period, *see Swanson,* 869 F.2d at 1225–26, and the lack of any statutory requirement that collection efforts cease during the thirty-day validation period. *Colmon,* at 695–96. Finally, it drew a distinction between "justification for a delay in payment and a dispute as to the validity of the debt", *id.* at 695, noting that the language in both notices relating to phone calls merely "stated plaintiff's option, if delay in payment is justified, to arrange payment terms." *Id.*

*Colmon* is distinguishable from this case. First, and most importantly, because the second notice sent to the debtor stated, *inter alia,* "WITHIN 72 HOURS, PAY THE BALANCE IN FULL OR CALL US AT (201) 981–9600 TO ARRANGE TERMS." *Id.* at 695. And second, because the time period between the mailing of the first (October 13, 1988) and second (November 3, 1988) notices was three weeks, as opposed to eight days in this case. The first distinction is of significance because the second notice in this case does not make any reference to calling to "arrange terms". The second distinction is of importance because the time period between the giving of the two notices is greater, thereby lessening the possibility that the second notice would deter a consumer considering disputing the validity of a debt from doing so or doing so by improper telephonic means.

■ To the extent that *Colmon* is not distinguishable, on the facts of this case this Court rejects its analysis for the following reasons. First, the Court must remain cognizant that the defendant's compliance with the FDCPA must be viewed from the perspective of the least sophisticated consumer. When viewed from such a perspective, the Court finds confusing, notwithstanding the clear reference to the reverse side of the document and the appropriate debt validation language itself, de-

fendant's statement to call "today" if there is valid reason for non-payment.[5] Such a statement fundamentally contradicts and detracts from the requirement that, to dispute the validity of the debt or any portion thereof, the consumer must do so in *writing*. *See* 15 U.S.C. § 1692g(b) (discussing the writing requirement). A consumer calling the defendant would not be exercising her validation rights and would not be entitled to the statutory cessation of debt collection activities (with respect to that portion of the debt that is disputed). *See id.* (requiring that debt collection activities cease from the time the debt collector receives written notification that the consumer disputes the debt until the time that the debt collector obtains verification of the debt or a copy of a judgment or the name and address of the original creditor and mails the same to the consumer).

Additionally, in this case, the second notice does nothing but add to that confusion. Just more than one week after mailing the initial collection notice to the plaintiff, the defendant sent a collection notice stating that plaintiff should pay in full "today" or phone, that contained no restatement of the prior debt validation language or any reference to the important information on the back of the first collection notice. Again, the reference to telephoning serves to negate the message that plaintiff must exercise her rights to dispute the debt in writing. Moreover, that failure is further aggravated by the absence of any reference to the debt validation notice. Though Congress mandated neither that debt collection efforts cease during the thirty-day validation period nor that every collection notice sent to the plaintiff repeat the debt validation notice, *see* 15 U.S.C. § 1692g(a) (providing only that such written notice must be given in the collector's initial communication with the debtor or within five days thereafter), this does not excuse the

failure of a debt collector to convey effectively such notice to a consumer.[6] *Cf. Swanson*, 869 F.2d at 1225–26; *Butler v. Int'l Collection Serv., Inc.*, Civ. No. N–88–302 (D.Conn. June 6, 1989); *Riveria*, 682 F.Supp. at 176–77; *Ost*, 493 F.Supp. at 702–704. The Court holds that because the least sophisticated consumer would be confused by the defendant's attempt to comply with § 1692g, the defendant failed to effectively convey the debt validation notice to the plaintiff, and the plaintiff is entitled to summary judgment on this claim.

### 3) *Harassing or Abusive Conduct*

Plaintiff also seeks summary judgment on her claim that by means of its second collection notice the defendant "engaged in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Specifically, plaintiff asserts that the second notice's statement, giving her "THIS OPPORTUNITY TO SETTLE THIS MATTER IN A FRIENDLY MANNER", coming on the heels of the alleged threats contained in defendant's first notice, oppressively implied that the defendant would resort to unfriendly methods including violence, etc. if friendly methods did not succeed. Plf. Exh. B.

On the basis of the undisputed factual record, the Court holds that plaintiff is not entitled, as a matter of law, to summary judgment on this claim. Rather, the defendant is entitled to such judgment and this claim is, accordingly, dismissed. The Court does not deem the second notice, when read in its entirety, to be the type of oppressive or abusive conduct proscribed by § 1692d. *Cf. Harvey v. United Adjusters*, 509 F.Supp. 1218 (D.Or.1981) (finding abusive letter sent to consumer implying that she

---

5. While it might be argued that the "valid reason" language in the first notice, refers to a valid reason for failure to pay *timely* one's obligation, as apparently assumed by the *Colmon* court, in view of the remedial nature of the statute this Court finds no basis for finding that the least sophisticated consumer would make such an assumption.

6. In this instance, for example, if the defendant had stated in its first notice to call if plaintiff had a reason (apart from any underlying reason as to the validity of the debt) for failing to pay her debt in timely fashion, and placed in its second notice some reference to the important information contained on the back of its first collection notice, liability might not attach.

removed her head when receiving letters from debt collector, that she ignored her mail and bills, and that she lacked common sense to handle properly her financial matters).

#### 4) *Threats of Unlawful Conduct*

■ Plaintiff also contends that the defendant threatened unlawful conduct in violation of 1692e(5) by stating in its second collection notice that "All information obtained in our investigation WILL be used to collect this debt." Plf.Exh. B. With the exception of the words "in our investigation", the quoted sentence tracks the previously discussed statutory requirement of 15 U.S.C. § 1692e(11). Plaintiff also contends that the two references to the term "investigation" in the second collection notice threaten unlawful conduct specifically prohibited by § 1692c(b), which forbids debt collectors, except as provided in § 1692b with respect to location information, from communicating with third parties concerning the collection of a debt without the consumer's consent or a court's permission.

For the reasons set forth by Judge Dorsey in *Colmon*, this Court disagrees and dismisses this claim. As noted in *Colmon*, *Swanson* is distinguishable, the statement at issue "is simply a reiteration of the § 1692e(11) notice in the follow-up collection letter", and the words "in our investigation" do not threaten improper third-party contact...." *Colmon*, at 696.

#### 5) *Lack of Authority to Collect*

■ Plaintiff's next contention is that the defendant's alleged lack of authority to collect on the account ran afoul of 15 U.S.C. § 1692e(9)'s prohibition against sending any written communication creating a false impression as to its authorization.[7]

The collection agreement between Chase and the defendant's parent corporation, Payco American Corporation, provides, in pertinent part, that "[the parent] shall not transfer collection activities on an Account from one of its offices to another without [Chase's] prior written approval." 1988 Agreement at ¶ 3. Plaintiff has also offered evidence of a May 18, 1988 letter from Chase to the parent corporation which specifically rejects the parent's proposal for contractual permission to transfer a collection account "from one Payco office to another" without Chases's prior approval. Without explicitly conceding or denying the effect of these statements, the defendant has submitted the affidavit from Chase's Second Vice President indicating that "[Chase] understands that [defendant] is a wholly-owned subsidiary of Payco American Corporation and pursuant to the agreement between Payco American Corporation and [defendant], [the latter] was authorized to collect debts on behalf of [Chase], [including the debt at issue here]." DeGeorge Aff. at ¶ 5.

Whether this statement creates a genuine dispute of material fact need not be resolved, because the plaintiff is not entitled to summary judgment on this claim as a matter of law. As stated under very similar circumstances in *Colmon:*

> [P]laintiff offers no case law in support of her theory that lack of express authority in the contract would be in violation of § 1692e(9). That the collection letters and other communications were undertaken by a wholly-owned subsidiary of the entity which contracted with the creditor rather than the parent company is an overly technical argument which would not create a 'false impression' as to authorization in the mind of the least sophisticated consumer. Nor would it further the purposes of the FDCPA [to find such a violation]. The collection letters all clearly identified defendant as a collection agency. This is not the case where a debt collector at-

---

7. Specifically, the statute provides that the FDCPA is violated by: "The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval." 15 U.S.C. § 1692e(9).

tempts to clothe collection efforts with governmental or other official authority. *Colmon*, at 698–99. Since the defendant is entitled to judgment as a matter of law, this claim is dismissed.

### 6) *Licensing*

■ Plaintiff's final claim (or, more appropriately, set of claims) revolves around the allegation that the defendant engaged in collection activity in the State of Connecticut without a license. Though once again plaintiff offers no evidence in support of this allegation, the Court deems it admitted because the defendant implicitly concedes its truth. Connecticut law prohibits collection agencies, like the defendant, from engaging in debt collection activities within the state unless they obtain a license from the state banking commissioner. Conn.Gen.Stat. § 42–127a(a), § 42–131(*o* ). As noted in *Wagner v. American National Educ. Corp.*, Civ. No. N–81–541 (PCD) (D.Conn. Dec. 30, 1983), however, no private right of action exists to enforce the Connecticut Consumer Collection Agency Act. Rather, enforcement of its provisions is left in the hands of the state banking commissioner or the state's attorney. *Wagner*, slip op. at 7.

■ Plaintiff concedes as much, but argues that the defendant's noncompliance with state law violates the FDCPA. More precisely, she asserts that defendant's unlicensed collection activity violated the FDCPA's provisions against: 1) threatening to take action that cannot legally be taken, 15 U.S.C. § 1692e(5); 2) misrepresenting one's status as an authorized collection agency, 15 U.S.C. § 1692e(9); 3) engaging in the unfair practice of acting as a collection agency in violation of public policy, 15 U.S.C. § 1692f; 4) making the false representation that the debt collector is vouched for or affiliated with a state, 15 U.S.C. § 1692e(1); 5) making false representation concerning the legal status of a debt or any service or compensation that may be lawfully received in collection thereof by the debt collector, 15 U.S.C. § 1692e(2); 6) using false representations or deceptive means to attempt to collect a debt, 15 U.S.C. § 1692e(10); 7) using unfair means to collect a debt, by attempting to collect an amount not permitted by law, 15 U.S.C. § 1692f(1); and 8) making false representations in connection with the collection of a debt, 15 U.S.C. § 1692e.

The only reference to licensing in the defendant's collection notices is the statement in the first notice sent to the plaintiff that "THIS COLLECTION AGENCY IS LICENSED BY THE OFFICE OF THE COMMISSIONER OF BANKING, ... MADISON, WI[SCONSIN]...." Plf.Exh. A. Plaintiff's second notice omits that sentence but does indicate, like the first notice, that the defendant is a collection agency.

Plaintiff argues that the defendant, by demanding payment on two occasions on the outstanding debt and stating that it would use all means to enforce collection, unlawfully threatened action that legally could not be taken in light of its failure to obtain the proper licensure from Connecticut state authorities. To buttress her argument that whether an act can legally be taken is to be determined by applicable state law, plaintiff points to non-authoritative commentary issued by the FTC stating, by way of example:

> If state law forbids a debt collector from suing in his own name [or from doing so without first obtaining a formal assignment and that has not been done], the debt collector may not represent that he will sue in that state.

53 Fed.Reg. 50106, col. 2 (1988); *see also West v. Costen*, 558 F.Supp. 564, 581–82 (W.D.Va.1983) (applying state law to determine whether a debt collector has violated § 1692f(1)'s prohibition against the collection of any amount not "permitted by law"). Here, state law forbids a debt collector from acting as a collection agency without first being licensed by the proper state authorities. Hence, plaintiff argues that in demanding payment and stating that it intended to use all means at its disposal to collect and to enforce the debt (in other words, threatening to collect the debt), the defendant violated the FDCPA.

Defendant fails to respond to this argument or offer any authority contradicting

that offered by the plaintiff. Instead, it incorrectly argues that plaintiff is attempting to evade *Wagner's* scope in order to sue under the Connecticut Consumer Agency Act. This argument is not persuasive. Accordingly, the Court finds that the defendant violated § 1692e(5) of the FDCPA by threatening to take action that legally could not be taken.[8]

■ Plaintiff's second "licensing" claim is that the defendant "falsely represented its authorization to send collection communications" and in doing so violated the FDCPA's prohibition against the use of written communications falsely represented to be authorized or approved by state officials. *See* 15 U.S.C. § 1692e(9). There is no merit to this claim because defendant's collection notices contain no reference, either explicit or implicit, regarding authorization from Connecticut authorities. Therefore, no false representation concerning such authorization has been established. This claim is dismissed because the defendant is entitled to summary judgment as a matter of law.

■ The next licensing claim raised by plaintiff is defendant's alleged false representation that it was vouched for or affiliated with the state of Connecticut. *See* 15 U.S.C. § 1692e(1). Plaintiff's contention here is that defendant falsely implied that it is licensed to act as a collection agency in Connecticut because that is required by the law to engage in consumer collection in this State. The Court disagrees because it does not follow from noncompliance with the licensure requirement that defendant made a false representation. The defendant made no representation that it was licensed in Connecticut. In fact, it stated only that it was licensed in Wisconsin. In the ab-

sence of a false representation, this claim must fail.[9] The same is true for the claim that the defendant falsely represented its status as a licensed collection agency to attempt to collect plaintiff's debt. Accordingly, both claims are dismissed.

■ Plaintiff also argues that §§ 1692e, in general, and 1692e(10), in particular, were violated by defendant's deceptive attempt to engage in collection activity in direct contravention of state law. The defendant has made no effort to address this claim. In the absence of any such opposition other than that previously noted, the plaintiff is entitled to summary judgment as a matter of law on this claim because the Court finds deceptive the defendant's attempt to collect a debt when prohibited from doing so by Connecticut law.

■ Finally, plaintiff claims that defendant violated § 1692f(1)'s prohibition against the collection of debt amounts not expressly authorized by the agreement creating the debt or otherwise permitted by law. Congress plainly stated that § 1692f is violated by:

> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f(1). Here, plaintiff misapplies this portion of the FDCPA by reducing this statutory prohibition to the statement that the defendant may not collect any amount unless permitted by law. The focus of the statutory provision, however, is on the amount of the debt to be collected, rather than the collector's authorization to

---

8. For the similar reasons, the Court holds that the defendant's unlicensed actions as a collection agency in the state of Connecticut constituted an "unfair or unconscionable" method of debt collection in violation of § 1692f. By failing to seek the proper license from the state banking commissioner, for example, the defendant deprived the plaintiff of her right as a consumer debtor residing within the state to have the defendant's qualifications as a collection agency reviewed by state authorities. *See* Conn.Gen.Stat. § 42–127a(b). Accordingly, the

plaintiff is also entitled to summary judgment on this claim.

9. For similar reasons, plaintiff's § 1692e(2) claim is rejected. There is no evidence that defendant falsely represented either the *legal status of the debt* or the amount of services rendered or compensation it might be entitled to for collection of the debt. That defendant engaged in unlicensed collection activity is not, on the basis of the facts of this case, relevant to proving this claim.

**1416**

collect any debt, whatever its amount. The case law supports this interpretation. *See, e.g., West,* 558 F.Supp. at 581–82 (interpreting § 1692f(1)). For this reason, this claim fails as a matter of law and is dismissed.

C) Defendant's Summary Judgment Motion

The defendant also cross-moved for summary judgment. Since, however, the Court has already addressed all the claims upon which it seeks summary judgment, the Court will not discuss those claims again now.

### Conclusion

In accordance with this ruling, the plaintiff is granted summary judgment on her validation notice claim, and on those licensing claims alleging a violation of § 1692e(5), § 1692f, § 1692e, and § 1692e(10). Plaintiff's is not entitled to summary judgment as a matter of law on her false statement (re: employment investigation and use of the term "professional") claim, her § 1692e(5) threat to sue (intent) claim, her § 1692e(11) claim, her § 1692d claim, her § 1692e(5) threat to take unlawful conduct (re: "in our investigation") claim, her lack of authority claim, and on her licensing claims asserting violations of § 1692e(9), § 1692e(1), § 1692e(2), and § 1692f(1). Those claims are dismissed. Finally, plaintiff's motion for summary judgment on her § 1692e(10) (all approved means) claim is denied because and genuine and material factual disputes. In accordance with the above, defendant's motion is also granted in part and denied in part.

Both parties are hereby directed to file simultaneously briefs on the issue of damages for those violations found thus far by July 2, 1990. Each side will then be entitled to file one, and only one, reply brief by July 13, 1990. The Clerk is directed to issue the Court's standard Pretrial Order forthwith.

SO ORDERED.