**Robert FERGUSON, on behalf of himself and all others similarly situated Plaintiff,**

v.

**CREDIT MANAGEMENT CONTROL, INC. Defendant.**

No. 8:00–CV–01492–T–23C.

United States District Court,
M.D. Florida,
Tampa Division.

March 23, 2001.

---

Joseph W. Bonie, Law Office of Joseph W. Bonie, St. Petersburg, FL, for Robert Ferguson, on behalf of himself and all others similarly situated, plaintiffs.

Donald R. Kirk, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, for Credit Management Control, Inc., defendant.

## ORDER

JENKINS, United States Magistrate Judge.

Before the court are Motion and Memorandum of Law by Credit Management

Control for Summary Judgment (Dkts.7, 8); Motion and Memorandum of Law by Robert Ferguson in Opposition to Defendant's Motion for Summary Judgment and for Partial Summary Judgment (Dkt.14); and Response by Credit Management Control in Opposition to Plaintiff's Motion for Partial Summary Judgment (Dkt.23).[1] Oral argument has been held.

### Procedural Background

 This action commenced on July 24, 2000, with the filing of a "Class Action Complaint" against the defendant, Credit Management Control, Inc. ("CMC"). The complaint was filed pursuant to 15 U.S.C. § 1692, *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), and Fla. Stat. § 559.55, *et seq.*, the Florida Consumer Collection Practices Act ("FCCPA"). It asserts the following two (2) causes of action: a violation of the FDCPA for using false or deceptive representation in attempting to collect a debt without a proper license in Florida (Count I); and violations of the FCCPA for mailing "dunning letters"[2] without being licensed as a debt collector pursuant to Fla. Stat. §§ 559.72 and 559.565 (Count II).

On October 26, 2000, defendant filed a motion for summary judgment before any discovery had taken place.[3] Plaintiff then filed a motion in opposition to defendant's motion for summary judgment and a motion for partial summary judgment. De-

fendant submitted its response on January 12, 2001.

### Standard of Review

Summary judgment should be entered when there is no genuine issue regarding any material fact when all the evidence is viewed in the light most favorable to the non-moving party. *See* Rule 56, Fed. R.Civ.P.; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 609 (11th Cir.1991). A genuine issue of material fact exists when there is sufficient evidence in favor of the non-moving party for a reasonable jury to return a verdict in its favor. *See Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir.1995) (citations omitted).

### Facts

The following facts are undisputed in this case:

(1) Plaintiff, Robert Ferguson ("Ferguson"), is a "consumer" as defined in 15 U.S.C. § 1692a(3) and Fla. Stat. § 559.55(2). (*See* Dkt. 14 at 2).

(2) Defendant, Credit Management Control, Inc. ("CMC"), is a collection agency governed by the FDCPA and the FCCPA. (*See* Dkt. 8 at 2).

(3) The obligation allegedly due Aerial Operating Company from plaintiff is a "debt"

---

1. The parties have consented to proceed before the Magistrate Judge as to these motions pursuant to Title 28, United States Code, Section 636(c) and Fed.R.Civ.P. 73.

2. A "dunning letter" is a demand for payment from a delinquent debtor. *See* Black's Law Dictionary 518 (7th ed.1999).

3. Rule 56(b), Fed.R.Civ.P., allows a defendant to move for summary judgment at any time. *See id.* The rule does not require the parties to engage in discovery before moving for sum-

mary judgment. *See Reflectone, Inc. v. Farrand Optical Co., Inc.,* 862 F.2d 841, 843–44 (11th Cir.1989). However, Rule 56(f), Fed. R.Civ.P., permits the Court to refuse to consider a summary judgment motion if it appears from the affidavits that the party opposing the motion cannot "for reasons stated present by affidavit facts essential to justify the party's opposition." *Id.* As the parties stipulate there are no genuine issues of material facts, the Court will consider the motion without requiring further discovery.

or "consumer debt" pursuant to the FDCPA and FCCPA. (*See* Dkt. 14 at 2).

(4) On or about June 27, 2000, CMC sent Ferguson a letter attached as Exhibit A to plaintiff's complaint (*See* Dkt. 1 Ex. A). This one (1) page letter states, in pertinent part and not to scale:

[CMC street address] [CMC letterhead]

June 27, 2000 [CMC mailing address]

[Ferguson's address] Account No.: C74623
 Total Due: $31.25

\* \* \* Detach Upper Portion And Return with Payment\* \* \*

| Creditor | Regarding | This Debt Amount |
|---|---|---|
| Aerial Operating Co–Tam | Cellular Charges | $31.25 |

Total Balance Due: $31.25

\* \* \*Request For Payment In Full\* \* \*

Your creditor has turned your account to our collection agency for payment. Please take care of this bill by choosing one of the following options.

●Mail payment in full by check or money order to: [CMC mailing address]

●Come to our office to pay your account at: [CMC office address]

●Contact our office at (262) 633–9650 or (800) 501–1025 to make arrangements to pay this account.

This communication is from a debt collector.

This is an attempt to collect a debt. Any information will be used for that purpose.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within 30 days from

receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

(5) CMC was not registered with the Florida Department of Banking when it mailed its collection letter dated June 27, 2000 to Ferguson. (*See* Dkt. 23 at 1).

(6) Prior to sending the letter to Ferguson, CMC researched the State of Florida's requirements for conducting business as a consumer collection agency.[4] (*See* Dkt. 8 Ex. A). This research included a review of the ACA "Summary of State Consumer Collection Requirements,"[5] and the State of Florida's Department of State, Division of Licensing internet website regarding its licensing requirements. (*See id.*). CMC registered with the Florida Department of State and received confirmation of registration as of October 21, 1999. (*See id.*). CMC mistakenly believed it was exempt from registering with the Florida Department of Banking because the Florida Department of State, Division of Licensing's internet website listed specific exemptions from Florida's licensing requirements.[6] (*See id.*).

(7) CMC's stated purpose for mailing the letter was "an attempt to collect a debt." (*See* Dkt. 23 at 3).

---

4. During September 1999, CMC began researching Florida's registration requirements.

5. The ACA, a national trade association for consumer collection agencies, publishes its "Summary of State Consumer Collection Requirements" which is a guide to interstate consumer collection licensing requirements. (*See* Dkt. 8 Ex. A).

6. The Florida Department of State, Division of Licensing provides exemptions from its licensing requirements for "collection agencies, and their employees, not engaged in repossessions." (Dkt. 8 Ex. C).

## Discussion

The crux of the parties' dispute is the application of §§ 1692e(5) and 1692e(10) of the FDCPA to the facts at hand. As there are no genuine issues of material facts in dispute, summary judgment is appropriate in this matter. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 609 (11th Cir. 1991); *but see Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1176 (11th Cir.1985) (disagreement regarding inferences to be drawn from the facts, if reasonable, is for the trier of fact).

The parties do not dispute the material facts of this case; however, they dispute the conclusions to be drawn therefrom. Plaintiff argues that CMC violated Florida law by attempting to collect a debt without being properly licensed as a "debt collector" in Florida. Plaintiff also argues that CMC's alleged violation of state law constitutes a per se violation of the FDCPA, 15 U.S.C. § 1692e(5). Additionally, plaintiff argues that CMC violated 15 U.S.C. § 1692e(10) by falsely representing that it was a debt collector, when it was not registered with the Florida Department of Banking.

Defendant, on the other hand, argues that it did not violate the FCCPA by mailing a collection letter while it was not registered with the Florida Department of Banking.[7] Moreover, defendant argues that even if it did violate the Florida statute, it did not violate the FDCPA by merely failing to register with the Florida Department of Banking before it mailed the letter.

Congress enacted the FDCPA to:

eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 U.S.C. § 1692(e). The FDCPA was "not intended to shield ... consumers from the embarrassment and inconvenience which are the natural consequences of debt collection." *Dalton v. FMA Enters., Inc.*, 953 F.Supp. 1525, 1531 (M.D.Fla.1997) (citation omitted).

 The FDCPA is a strict liability statute. *See Kaplan v. Assetcare, Inc.*, 88 F.Supp.2d 1355, 1361–62 (S.D.Fla.2000); *see also Russell v. Equifax*, 74 F.3d 30, 33–34 (2nd Cir.1996). A single violation of § 1692e is sufficient to establish civil liability. *See* 15 U.S.C. § 1692k(a); *see also Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997).

Under the FDCPA, a debt collector may not "threat[en] to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). Moreover, a debt collector is prohibited from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

 Two different standards have developed for analyzing claims under §§ 1692e(5) and 1692e(10) of the FDCPA: the "least sophisticated debtor" standard or the "unsophisticated consumer" standard. *Compare Jeter*, 760 F.2d at 1175–76 (11th Cir.1985); *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir.1996); *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1226–27 (9th Cir.1988);

---

7. On August 29, 2000, defendant registered with the Florida Department of Banking. (*See* Dkt. 8 at 5).

*Van Westrienen v. Americontinental Collection Corp.,* 94 F.Supp.2d 1087, 1098–1102 (D.Or.2000); *Marchant v. U.S. Collections W., Inc.,* 12 F.Supp.2d 1001, 1006 (D.Ariz.1998); *with United States v. National Fin. Servs., Inc.,* 820 F.Supp. 228, 232 (D.Md.1993), *aff'd,* 98 F.3d 131 (4th Cir.1996) *with Nance v. Friedman,* 2000 WL 1700156, *2 (N.D.Ill.2000); *Veillard v. Mednick,* 24 F.Supp.2d 863, 866 (N.D.Ill. 1998); *and Withers v. H.R. Eveland,* 988 F.Supp. 942, 946 (E.D.Va.1997). Both standards are quite similar. The Eleventh Circuit follows the "least sophisticated debtor" standard, which analyzes whether a hypothetical least sophisticated consumer would be deceived or misled by the debt collector's practices. *See Jeter,* 760 F.2d at 1175 (citation omitted).[8]

The Eleventh Circuit in *Jeter* limited the application of the "least sophisticated debtor" standard to cases involving false or misleading representations in violation of § 1692e(10). The court did not apply the standard to § 1692e(5) because "the sophistication, or lack thereof, of the consumer [was] irrelevant to whether [defendant] 'threatened to take any action ... that was not intended to be taken.'" *Id.* At first blush, it appears that the court

---

8. The Fourth and Seventh Circuits, however, follow the "unsophisticated consumer" standard, which "protects the consumer who is uninformed, naive, or trusting." *Nance,* 2000 WL 1700156 at *1 (citation omitted). *See also Veillard,* 24 F.Supp.2d at 866 ("Seventh Circuit evaluates communications from debt collectors 'through the eyes of the unsophisticated consumer.' "); *Withers,* 988 F.Supp. at 946 (Fourth Circuit analyzes how an unsophisticated debtor would interpret the debt collector's communication). This standard also contains an objective component of reasonableness that "protects debt collectors from liability for unrealistic or peculiar interpretations of collection letters." *Nance,* 2000 WL 1700156 at *1 (citation omitted).

9. A debt collector violates § 1692e(5) by threatening to take action that cannot legally

held that the "least sophisticated debtor" standard did not apply to any claims under § 1692e(5). Upon closer examination, the court addressed only one of two possible violations under § 1692e(5).[9]

In *Jeter,* the issue concerned whether the debt collector violated the second prong of § 1692e(5) by threatening action that it did not intend to take. *See Jeter,* 760 F.2d at 1175. The court did not address a claim that the debt collector threatened to take action that could not *legally be taken. See id.*

In *Jeter,* the collection agency sent a letter to plaintiff threatening to take legal action if she failed to respond.[10] *See Jeter,* 760 F.2d at 1171. The plaintiff did not respond and the defendant sent her another letter approximately one month later. *See id.* This letter again threatened legal action if she did not pay the entire balance within five days. *See id.* Neither the defendant nor the creditor took any legal action. *See id.* Rather, the plaintiff filed suit alleging violations of the FDCPA, including §§ 1692e(5) and 1692e(10). *See id.* at 1171–72. Thus, the issue concerned the defendant's intent, not whether it could legally take the threatened action, as in the case at bar. *See id.* at 1175.

---

be taken. *See* 15 U.S.C. § 1692e(5). A debt collector also violates § 1692e(5) when it threatens to take action that is not intended to be taken. *See* 15 U.S.C. § 1692e(5).

10. The collection notice read:

Take notice that the above creditor claims you are indebted to him as shown.
Although duly demanded, the same has not been paid. You have ignored our previous contacts. Therefore, you are hereby notified that unless satisfactory arrangements are made within five (5) days from this date, we will recommend to our client, suit and subsequent action (judgment, garnishment, levy, and/or attachment proceedings) may be instigated against you by their attorneys. Respond now and avoid the necessity of further action....

*Jeter,* 760 F.2d at 1171.

Although *Jeter* left the issue open as to whether the "least sophisticated consumer" standard applies to claims that the debt collector allegedly threatened to take action that can not legally be taken, at least one court outside the Eleventh Circuit has resolved the issue. *See Swanson,* 869 F.2d at 1226–27 (holding that the "least sophisticated debtor" standard applies to "an allegation that a debt collector made a 'threat to take any action that cannot legally be taken' "). Accordingly, this Court finds it appropriate to utilize the "least sophisticated debtor" standard in evaluating Ferguson's claims.

### 1. *Claim Under Subsection (5)*

The issue of whether failing to register with the appropriate state licensing authority is a per se violation of 15 U.S.C. § 1692e(5) is apparently one of first impression in this Circuit. Other courts, however, have considered the issue with differing results. *Compare Wade v. Regional Credit Ass'n,* 87 F.3d 1098, 1099–1101 (9th Cir.1996) *with Sibley v. Firstcollect, Inc.,* 913 F.Supp. 469, 471–72 (M.D.La.1995); *Russey v. Rankin,* 911 F.Supp. 1449, 1459 (D.N.M.1995); *Kuhn v. Account Control Tech., Inc.,* 865 F.Supp. 1443, 1451–52 (D.Nev.1994); *and Gaetano v. Payco of Wisconsin, Inc.,* 774 F.Supp. 1404, 1414–15 (D.Conn.1990).

### a. *Definition of "threat"*

It is necessary to first examine the statutory language of § 1692e(5) before analyzing the differing case law on point. Section 1692e(5) proscribes threats to take action that cannot legally be taken. *See* 15 U.S.C. § 1692e(5). The FDCPA, however, does not define what constitutes a "threat."[11]

Other courts that have addressed this issue first examined the language of the communication to determine whether the communication "threatened" an action. If the language was "threatening," then the courts determined whether the debt collector could "legally" take the "threatened" action. *See e.g. Goldberg v. Transworld Sys., Inc.,* 164 F.3d 617, 1998 WL 650793, *1 (2nd Cir.1998); *Swanson,* 869 F.2d at 1226–28; *Nance,* 2000 WL 1700156 at *2; *Jones v. Weiss, Neuren & Neuren,* 95 F.Supp.2d 105, 109 (N.D.N.Y.2000); *Van Westrienen v. Americontinental Collection Corp.,* 94 F.Supp.2d 1087, 1102 (D.Or. 2000); *Raimondi v. McAllister & Assocs., Inc.,* 50 F.Supp.2d 825, 827 (N.D.Ill.1999); *Veillard v. Mednick,* 24 F.Supp.2d 863, 867 (N.D.Ill.1998); *Patzka v. Viterbo Coll.,* 917 F.Supp. 654, 660 (W.D.Wis.1996); *Wiener v. Bloomfield,* 901 F.Supp. 771, 775–76 (S.D.N.Y.1995); *Rutyna v. Collection Accounts Terminal, Inc.,* 478 F.Supp. 980, 982 (N.D.Ill.1979).

Examples of "threatening" communications include: threats to sue,[12] threats to garnish wages and/or seize assets,[13] threats to contact the debtor's neighbors and/or employer,[14] threats to subject the

---

**11.** Black's Law Dictionary defines "threat" as "a communicated intent to inflict harm or loss on another or on another's property ... [or] an indication of an approaching menace [such as] the threat of bankruptcy." Black's Law Dictionary 1489–90 (7th ed.1999).

**12.** *See Nance,* 2000 WL 1700156, at *1–2 (letter threatened imminent litigation although the debt collector may not have had authority to file suit at the time the letter was mailed).

**13.** *See Van Westrienen,* 94 F.Supp.2d at 1099–1102 (debt collector's letter threatened to garnish wages and/or seize property within five days, when it could not legally seize the assets or garnish wages within the specified time period).

**14.** *See Rutyna,* 478 F.Supp. at 981–82 (letter threatened to contact debtor's neighbors and employer unless payment was made immediately).

debtor to additional costs for collecting the debt,[15] threats to investigate the debtor's employment,[16] and threats to transfer the account to an attorney for assessment.[17] As will be discussed *infra*, defendant's dunning letter did not contain any threatening language. Rather, the letter was devoid of any threats to take action, including the examples mentioned previously. The only conceivably threatening language was required to be in the letter pursuant to the FDCPA. Accordingly, the Court agrees with defendant that the letter did not contain any "threatening" language in violation of § 1692e(5).

### b. *Action that could not legally be taken*

The courts are not in harmony on the issue of whether a violation of state law for failure to meet state licensing or registration requirements meets this statutory definition under the FDCPA.

Several district courts have held that a debt collection agency's failure to obtain a required state license is an attempt to collect a debt in violation of 15 U.S.C. § 1692e(5). *See Sibley, Russey, Kuhn,* and *Gaetano supra.* In *Sibley,* the defendant sent collection letters to plaintiff without first obtaining a license to engage in debt collection activities in Louisiana. *See Sibley,* 913 F.Supp. at 471. The court reasoned that attempting to collect a debt without possessing a license constituted a threat to "take an action that it could not legally take, namely, act as a debt collector in the state of Louisiana." *Id.* Accordingly, the court held that defendant violated § 1692e(5) of the FDCPA. *See id.* at 472.

Similarly, the court in *Kuhn* held the defendant's failure to hold the required state license violated § 1692e(5) because it "threatened to take action that legally could not be taken." *Kuhn,* 865 F.Supp. at 1452. The court did not articulate its reasoning other than to cite *Gaetano* for support. *See id.* The court in *Russey* likewise cited *Gaetano* to support its holding that unlicensed collection efforts constituted a violation of § 1692e(5), without providing additional analysis. *See Russey,* 911 F.Supp. at 1459.

The court in *Gaetano* held that the defendant violated § 1692e(5) by failing to obtain the required state license without articulating its reasoning. *See Gaetano,* 774 F.Supp. at 1414–15. The court accepted the plaintiff's arguments, in part, because they were unopposed by the defen-

---

**15.** *See Jones,* 95 F.Supp.2d at 110 (defendant's letter, which stated that it may seek court action and assess costs against plaintiffs, did not violate § 1692e(5) because plaintiffs did not present evidence proving that legal action was not an option for defendant); *Goldberg,* 1998 WL 650793 at *1 (language that stated the consumer could eliminate the "possibility of additional costs" by communicating with the creditor was not a "threat," but a suggestion that "the debtor contact the creditor at once to avoid possible additional costs."); *Patzka,* 917 F.Supp. at 658–60 (letter threatened legal action if payment was not received within five days, but payment represented collection costs which could not legally be collected according to state law).

**16.** *See Swanson,* 869 F.2d at 1227–28 ("threat to make a 'complete investigation concerning

[debtor's] employment' violate[d] § 1692e(5) ... [because the FDCPA] prohibits such unconsented and unauthorized communication with a debtor's employer concerning the debt...."); *Raimondi,* 50 F.Supp.2d at 827 (threat to contact debtor's employer violated § 1692e(5) because it would have been an unconsented and unauthorized contact with the employer regarding the debt).

**17.** *See United States v. Nat'l Fin. Servs., Inc.,* 820 F.Supp. 228, 233 (D.Md.1993) (language in letter that "your account will be transferred to an attorney if it is unpaid after the deadline date" and "remember your attorney will want to be paid" constituted a threat of legal action), *aff'd,* 98 F.3d 131 (4th Cir. 1996).

dant. *See id.* Specifically, the plaintiff successfully argued that "in demanding payment and stating that it intended to use all means at its disposal to collect and to enforce the debt," the defendant violated the FDCPA because it threatened action that it could not legally enforce. *Id.* Without providing further analysis or comment, the court held that defendant's failure to obtain the required state license constituted a per se violation of 15 U.S.C. § 1692e(5). *See id.*

Conversely, the Ninth Circuit in *Wade* held that a debt collector's attempts to collect a debt without obtaining the required state license were not per se violations of the FDCPA. *See Wade,* 87 F.3d at 1100–01. In that case, the collection agency sent two notices to plaintiff while she resided in California. *See id.* at 1099. Plaintiff then moved to Idaho, where the defendant sent her another collection notice and telephoned her.[18] *See id.* The defendant did not have a permit to collect debts in Idaho, and Idaho law prohibited debt collectors from engaging in such activities without a permit. *See id.* at 1100.[19] The plaintiff argued that defendant violated §§ 1692e(5), 1692e(10), and 1692f of the FDCPA. *See id.* at 1099–1101.

With respect to § 1692e(5), the court held the collection notice was not a threat to take action, but merely an informational notice reminding the plaintiff of her debt responsibilities. *See id.* The notice did not threaten to sue or take legal action. *See id.* Although the letter included the following language: "this has been sent to you by a collection agency and is an attempt to collect a debt and any information obtained will be used for that purpose," this language was required to be in the notice pursuant to 1692e(11).[20] *Id.* Therefore, if the defendant had not included the language concerning debt collection then it would have violated the FDCPA. *See id.*

The *Wade* court utilized the "least sophisticated debtor" standard in analyzing whether the defendant's "letter or telephone call [was] likely to deceive or mislead a hypothetical 'least sophisticated debtor.'" *Id.* The court determined that a least sophisticated debtor would regard the language of the letter as a "prudential reminder, not as a threat to take action." *Id.* Accordingly, the court held that even though the defendant may have violated state law by not obtaining the required license, it did not violate § 1692e(5). *See id.*

As previously discussed, the Eleventh Circuit has not directly addressed whether the application of the "least sophisticated debtor" standard applies to "threats to take action that cannot legally be taken" in violation of § 1692e(5).

18. The collection notice read:
WHY HAVEN'T WE HEARD FROM YOU? OUR RECORDS STILL SHOW THIS AMOUNT OWING. If not paid TODAY, it may STOP YOU FROM OBTAINING credit TOMORROW. PROTECT YOUR CREDIT REPUTATION. SEND PAYMENT TODAY. DO NOT DISREGARD THIS NOTICE. YOUR CREDIT MAY BE ADVERSELY AFFECTED. CONTACT U.S. IMMEDIATELY. *Id.*

19. In Idaho, a collection agency must apply for a license, pay a license fee, and pass an examination before a license will be issued. *See* Idaho Code §§ 26–2223—26–2229 (2000).

20. 15 U.S.C. § 1692e(11) proscribes the use of any false, deceptive, or misleading representation in connection with debt collection. *Id.* Prohibited conduct includes:

The failure to disclose in the initial written communication with the consumer ... that the debt collector is *attempting to collect a debt and that any information obtained will be used for that purpose,* and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.
*Id.* (emphasis added).

However, the factual situation presented in *Wade* is similar to that present in this case, and the rationale for the holding in *Wade* is also more persuasive that the district court cases relied on by plaintiff.

■ As in *Wade*, defendant's letter merely provided plaintiff with information concerning the status of his debt. The letter did not contain any *threatening* language. Rather, the letter merely stated the name of the creditor, the amount due, that it requested payment in full, and the location and telephone number where payment could be made. Noticeably absent was any language threatening to bring legal action if the debt was not paid. Further, the letter did not set a deadline for plaintiff's response. The letter merely provided information for the debtor's benefit.

A "least sophisticated debtor" would not perceive the letter as threatening, but would likely perceive it as information concerning the status of his debt. In the district court cases relied upon by plaintiff, the action threatened was far more egregious than the simple mailing of an informational letter. Accordingly, a "least sophisticated debtor" would not be misled or deceived by defendant's letter.

Plaintiff contends that the language "attempt to collect a debt" used in the letter constituted a threat to take action that defendant could not legally take. This argument is without merit. That particular language was required to be in the notice pursuant to 15 U.S.C. § 1692e(11). If defendant had omitted this language, then it would have been liable for violating § 1692e(11) of the FDCPA.

Even if the "least sophisticated debtor" standard were not applicable here, defendant's letter does not threaten action that could not legally be taken. *See Riveria v.*

*MAB Collections, Inc.*, 682 F.Supp. 174 (W.D.N.Y.1988), is instructive on this point. In *Riveria*, the court held that the statement at issue did not constitute a per se violation of § 1692e(5). *See id.* at 178. The letter did not threaten to take legal action, but merely advised the debtor that legal action "may be necessary to collect the bill." *Id.* In its analysis, the court did not apply the "least sophisticated debtor" standard, citing *Jeter* as support. *See id.* Rather, the court looked at the actual language of the letter to determine whether it threatened action that could not legally be taken or was not intended to be taken. *See id.* Because the letter was merely advisory, it did not violate § 1692e(5). *See id.*

In the present case, defendant did not violate § 1692e(5) of the FDCPA by failing to register with the Florida Department of Banking before sending the letter at issue. Rather, by looking at the plain language of the letter, the Court finds that defendant did not misrepresent its position. It did not hold itself out as a licensed debt collector in Florida. It did not threaten to take legal action if plaintiff did not respond to the notice. Moreover, the only language that Ferguson argues is "threatening" is required to be in the notice by the FDCPA. Consequently, defendant's letter informing plaintiff that his debt had been referred to a collection agency, even though defendant was not registered with the Florida Department of Banking, was not a per se violation of § 1692e(5). Accordingly, defendant's motion for summary judgment is granted on this issue.

### 2. *Claim Under Subsection (10)*

■ The court now addresses whether defendant used any false representations or deceptive means to attempt to collect a debt from plaintiff in violation of § 1692e(10).[21] The legal consequence of

---

**21.** The court notes that Ferguson did not

plead a violation of § 1692e(10) in his com-

defendant's communication to plaintiff, without first registering with the Florida Department of Banking, requires application of the "least sophisticated debtor" standard. *See Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1177 (11th Cir.1985).

*Wade,* 87 F.3d at 1100, is persuasive on this issue as well. As discussed *supra,* the court in *Wade* held that the defendant's collection notice did not violate § 1692e(10) because it merely provided information to the debtor. *See Wade,* 87 F.3d at 1100. The notice informed the plaintiff "that she had an unpaid debt, and properly informed her that failure to pay might adversely affect her credit reputation." *Id.* The notice did not falsely represent that the defendant had the power to collect a debt in the state. *See id.*

Here, defendant did not state that it had the power to collect debts in Florida, nor did it indicate that it was licensed to act as a collection agency in Florida. Rather, the letter merely informed plaintiff that he owed a debt to Aerial Operating Co–Tam and that he should contact defendant to make payment. Moreover, the letter did not state that the debt should be paid within a specific time period. Further, there was nothing in the letter indicating that defendant intended to take action against plaintiff if he failed to pay the debt. In short, there is nothing in the letter designed to mislead or deceive even the least sophisticated consumer. Accordingly, defendant did not violate

§ 1692e(10) of the FDCPA by sending the notice to plaintiff without first registering with the Florida Department of Banking. Thus, defendant's motion for summary judgment is granted on this issue as well.

**3. State Law Claim**

The only remaining issue is whether defendant violated the FCCPA, Fla. Stat. § 559.72(9), by failing to register with the Florida Department of Banking before it sent a collection letter to plaintiff.[22] This issue is apparently one of first impression in the state of Florida.

Plaintiff invokes the supplemental jurisdiction provisions of 28 U.S.C. § 1367(a).[23] Under § 1367(c), a court may decline to exercise supplemental jurisdiction in circumstances where the court has dismissed all of the federal claims over which it had original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). A court may also decline supplemental jurisdiction when the state law claim raises a novel or complex issue of state law. *See* 28 U.S.C. § 1367(c)(1). Dismissal is completely within the district court's discretion, and is proper when the federal claims are dismissed before trial leaving only the resolution of state law claims. *See United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (citations omitted). *See also Wade,* 87 F.3d at 1101.

Here, the Court has granted summary judgment for defendant on the federal

plaint, but raised it for the first time in his summary judgment motion. Assuming *arguendo* that plaintiff has properly raised this claim, summary judgment is nonetheless appropriate in favor of defendant.

**22.** Section 559.72(9) of the Florida Statutes provides "no person shall ... [c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist." *Id.*

**23.** Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form the same case or controversy under Art. III of the United States Constitution...." 28 U.S.C. § 1367(a).

claims. Therefore, the only remaining issue is one of state law. Moreover, the state law claim raises a novel question of Florida law, i.e., the interpretation of §§ 559.72(9) and 559.565(1). Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state law claim and the claim is dismissed without prejudice.

Accordingly, and upon consideration, it is **ORDERED**:

(1) Defendant's motion for summary judgment is hereby granted with respect to Count I of plaintiff's complaint;

(2) Plaintiff's motion for partial summary judgment is denied; and

(3) Count II of plaintiff's complaint is dismissed without prejudice to refile in state court if appropriate.