Kimberly S. KUHN, Plaintiff,

v.

ACCOUNT CONTROL TECHNOLOGY, INC., Defendant.

No. CV–S–93–1142–PMP (RLH).

United States District Court, D. Nevada.

Oct. 7, 1994.

As Corrected Oct. 18, 1994.

Mitchell D. Gliner, Las Vegas, NV, for plaintiff.

Howard Miller, Carelli & Miller, Las Vegas, NV, for defendant.

### ORDER

PRO, District Judge.

### I. *Background*

Plaintiff Kimberly S. Kuhn ("Kuhn") filed this action in November 1993 seeking damages pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., for the allegedly unlawful debt collection practices of Defendant Account Control Technology, Inc. ("ACT"). Kuhn alleges that beginning in April 1993 representatives of ACT repeatedly subjected her to abusive, unfair, and unlawful debt collection practices, both at her home and place of employment, in an effort to obtain repayment of a student loan incurred by Kuhn while attending business college. In addition to her FDCPA claims, Kuhn alleges that ACT's actions con-stituted an invasion of her privacy under Nevada law.

Defendant ACT filed an Answer (# 35) to Kuhn's Second Amended Complaint (# 33) in which they denied Kuhn's allegations and asserted a counterclaim for abuse of process. ACT's counterclaim alleged that Kuhn's suit was not brought to redress a genuine wrong, or injury, but rather as a strategy and ploy to intimidate and coerce ACT to enter into a settlement in order to avoid costly and protracted litigation.

Presently before the Court is Kuhn's Motion to Dismiss Counterclaim (# 38) filed on June 1, 1994. ACT filed an Opposition (# 43) on June 16, 1994. Kuhn filed a Reply (# 49) on July 5, 1994.

Also before the Court is ACT's Motion for Partial Summary Judgment (# 39) filed on June 3, 1994. Kuhn filed an Opposition (# 44) on June 17, 1994. On July 27, 1994, ACT filed a Reply (# 47). Kuhn filed her own Motion for Partial Summary Judgment (# 41) on June 6, 1994. ACT filed an Opposition (# 48) on June 30, 1994. Kuhn filed a Reply (# 50) on July 15, 1994.

Also before the Court is a document filed by ACT on July 22, 1994, entitled "Motion for Leave to Amend the Defendant's Answer to Plaintiff's Second Amended Complaint By Adding an Additional Affirmative Defense and Motion for Leave to File the Foregoing Motion After Time Set for Filing of Motions Under Rule 15, FRCP Pursuant to the Court's Scheduling Order" (# 51). Kuhn filed an Opposition (# 52) to this Motion on August 10, 1994. On October 7, 1994, the Court conducted a hearing regarding the foregoing Motions.

### II. *Discussion*

**A. Motion to Dismiss Counterclaim (# 38)**

Kuhn argues that ACT's Counterclaim should be dismissed because 1) within the context of this litigation, ACT is limited to the redress existing under 15 U.S.C. § 1692k(a)(3) and Rule 11 of the Federal Rules of Civil Procedure; 2) the Court lacks subject matter jurisdiction over the Counter-

claim; and 3) ACT's Counterclaim is preempted by the FDCPA and Rule 11 sanctions that are otherwise available. Because the Court finds that it is without subject matter jurisdiction over ACT's Counterclaim, Kuhn's Motion to Dismiss must be granted.[1]

■ Federal Rule of Civil Procedure 13 governs the assertion of Counterclaims in federal court and requires that a compulsory Counterclaim "arise[ ] out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed.R.Civ.P. 13(a). In the Ninth Circuit, the "logical relationship" test is used to determine whether two claims arise out of the same transaction or occurrence. *Pochiro v. Prudential Ins. Co. of America*, 827 F.2d 1246, 1249 (9th Cir.1987). "This flexible approach to Rule 13 problems attempts to analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all of the issues be resolved in one lawsuit." *Id.* (quoting *Harris v. Steinem*, 571 F.2d 119, 123 (2nd Cir.1978)).

Even under the liberal "logical relationship" test, the Court finds that ACT's Counterclaim is not mandatory because it did not arise out of the same transaction or occurrence that precipitated Kuhn's claims. Kuhn filed her FDCPA action because of ACT's alleged conduct with regard to ACT's efforts to collect the debt owed by Kuhn. As a result, resolution of this matter will focus upon whether ACT's conduct in attempting to collect the debt violated the FDCPA. ACT, on the other hand, filed its Counterclaim because it alleges that this suit was brought for improper purposes. Resolution of this issue will not focus at all upon the ACT's conduct in collecting the debt. Rather, the focus will be upon Kuhn's conduct in instituting this action, and whether the action was brought for improper purposes. Thus, the Court finds that the "essential facts" of the claims are not so logically connected as to require resolution within the same suit.

■ Furthermore, it is clear that ACT cannot maintain its Counterclaim under Rule 13(b) either, because "[a]s a permissive Counterclaim it must be supported by independent grounds for federal jurisdiction." *State Farm Fire & Casualty Co. v. Geary*, 699 F.Supp. 756, 762 (N.D.Cal.1987). Here, ACT's Counterclaim rests purely on state law. And while it does appear from the record that there may be party diversity, ACT's allegations fail to establish an amount in controversy sufficient to confer jurisdiction pursuant to 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000 ...."). Consequently, as this Court is without subject matter jurisdiction over ACT's Counterclaim, Plaintiff's Motion (# 38) must be granted.

**B. ACT's Motion for Partial Summary Judgment (# 39)**

1. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine

---

1. As the Court finds that it is without subject matter jurisdiction over ACT's Counterclaim, it need not address the merits of Kuhn's limitation of redress and preemption arguments.

issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *California Arch. Bldg. Prod. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

If the party seeking summary judgment meets this burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270 (9th Cir. 1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *Id.*

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1305–06 (9th Cir. 1982); *Admiralty Fund v. Jones,* 677 F.2d 1289, 1293 (9th Cir.1982).

All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor,* 677 F.2d 1297, 1298 (9th Cir.1982).

The trilogy of Supreme Court cases cited above establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1). *See also Avia Group Int'l, Inc. v. L.A. Gear Cal.,* 853 F.2d 1557, 1560 (Fed.Cir.1988).

## 2. Statutory Damages

ACT seeks summary judgment that total statutory damages in this case are limited to $1,000.00, as opposed to $1,000.00 per violation. Plaintiff does not oppose ACT's Motion in that regard. Therefore, the Motion will be granted as to the issue of statutory damages.

## 3. Invasion of Privacy

ACT also seeks summary judgment in its favor on Kuhn's second cause of action for invasion of privacy. ACT argues that summary judgment is warranted because, as a matter of law, "the mere placing of six telephone calls over a period of several hours to attempt to collect [a] debt does not constitute unreasonable conduct, or such extreme and outrageous conduct as would offend a person or ordinary sensibilities and support a claim for invasion of privacy." Defendant's Motion for Partial Summary Judgment (# 39) at 8.

■ Nevada, like many other jurisdictions, has adopted the Restatement's recognition that the tort of invasion of privacy may take the following four forms: "(1) unreasonable intrusion upon the seclusion of another; (2) appropriation of the name or likeness of another; (3) unreasonable publicity given to private facts; and (4) publicity unreasonably placing another in a false light before the public." *People for the Ethical Treatment of Animals (PETA) v. Berosini,* 110 Nev. 78, 867 P.2d 1121, 1130 (1994); Restatement (Second) of Torts § 652A(2) (1977). In this case, Kuhn rests her invasion claims upon the first (intrusion upon seclusion) and third (publicity to private facts) forms of the tort.

a) Unreasonable publicity given
to private facts.

■ The Nevada Supreme Court has held that "[t]o maintain a cause of action for public disclosure of private facts one must prove that a public disclosure of private facts has occurred which would be offensive and objectionable to a reasonable person of ordinary sensibilities." *Montesano v. Donrey Media Group*, 99 Nev. 644, 668 P.2d 1081, 1084 (1983), *cert. denied*, 466 U.S. 959, 104 S.Ct. 2172, 80 L.Ed.2d 555 (1984) (citing *Forsher v. Bugliosi*, 26 Cal.3d 792, 163 Cal.Rptr. 628, 608 P.2d 716 (1980); Restatement (Second) of Torts § 652D (1977)). Kuhn argues that ACT committed just such a public disclosure when its representative allegedly disseminated information regarding Kuhn's indebtedness to Kuhn's co-workers.

The Court finds, however, that under the facts of this case, Kuhn may not recover under such a theory. The Restatement, upon whose authority the Nevada courts place a great deal of reliance in this area, differentiates between the term "publicity" as it is used in § 652D, and "publication", as that term is used in connection with liability for defamation. *See* Restatement (Second) of Torts § 652D cmt. a (1977). "Publication", the Restatement explains, "includes any communication by a the defendant to a third person," while "publicity", on the other hand, "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.*

In other words, "it is not an invasion of the right of privacy, within the rule stated in [§ 652D], to communicate a fact concerning the plaintiff's private life to a single person or even a small group of persons." *Id.* In the case at bar, the evidence indicates that, at best, any dissemination of information that occurred was limited to the small group of Kuhn's co-workers with whom ACT's representative conversed on the phone. Thus, while a private fact may have been disclosed, it was not made "public" as that term is used in the Restatement.[2] Therefore, the to extent Kuhn alleges an invasion action for publicity given to private life, summary judgment in ACT's favor must be granted.

b) Unreasonable intrusion upon
the seclusion of another.

■ Kuhn, however, also asserts that her privacy was invaded by ACT's unreasonable intrusion upon her seclusion. To recover for the tort of intrusion, a plaintiff must prove the following elements: "(1) an intentional intrusion (physical or otherwise); (2) on the solitude or seclusion of another; (3) that would be highly offensive to a reasonable person." *PETA*, 867 P.2d at 1131.[3] Further, the Nevada Supreme Court instructs that "[i]n order to have an interest in seclusion or solitude which the law will protect, a plaintiff must show that he or she had an actual expectation of seclusion or solitude and that that expectation was objectively reasonable." *Id.* (citing *M & R Investment Co. v. Mandarino*, 103 Nev. 711, 748 P.2d 488, 493 (1987)). In this case, the focus of Kuhn's intrusion claim is on the repeated phone calls to her at work by ACT's representative; thus the issue becomes whether these calls intruded upon Kuhn's "solitude or seclusion".

■ The Court finds that Kuhn had a reasonable expectation of privacy at her place of work during working hours that arises from a desire to be left alone to perform the duties for which she was hired. The Court further finds Kuhn has put forth sufficient evidence to create an issue of fact regarding whether an intentional intrusion occurred as a result of the repeated phone calls made to Kuhn at her place of work during regular working hours. The assertions of Kuhn and her co-workers as to the extent of the disruptiveness of the repeated phone calls are sufficient to allow a trier of fact to conclude that ACT's representative

---

**2.** Interestingly, the Restatement provides the following illustration:

A, a creditor, writes a letter to the employer of B, his debtor, informing him that B owes the debt and will not pay it. This is not an invasion of B's privacy under this Section.

Restatement (Second) of Torts § 652D cmt. a, illus. 1 (1977).

**3.** This formulation is in accordance with the Restatement. *See* Restatement (Second) of Torts § 652B.

had intruded upon Kuhn's expectation of privacy in the work place.

■ On the issue of whether the representative's actions were "highly offensive to a reasonable person," the Nevada Supreme Court has noted that "[t]he question of what kinds of conduct will be regarded as a 'highly offensive' intrusion is largely a matter of social conventions and expectations." *PETA,* 867 P.2d at 1133 (quoting J. Thomas McCarthy, *The Rights of Publicity and Privacy,* § 5.10(A)(2)(1993)). Furthermore, a court should consider the following factors in determining whether a particular action is "highly offensive": "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Id.* (citations omitted).

ACT argues that summary judgment is warranted because, as a matter of law, "the mere placing of six telephone calls over a period of several hours to attempt to collect [a] debt does not constitute unreasonable conduct, or such extreme and outrageous conduct as would offend a person of ordinary sensibilities and support a claim for invasion of privacy." Defendant's Motion for Partial Summary Judgment (# 39) at 8. The Court finds, however, that consideration of a number of the aforementioned factors militates against such a conclusion.

First, as to the degree of intrusion, Kuhn has set forth evidence that the numerous phone calls at issue here significantly disrupted her place of work. Although there is a dispute over the length of time within which these calls took place, Kuhn has presented evidence that each time a call was made either she or a co-worker had to deal with it. Second, with regard to the context, the Court has already found that Kuhn had a reasonable expectation of privacy in her workplace. Third, Kuhn has put forth evidence that the conduct of ACT's representa-

tive may have been abusive. Finally, it is clear the Kuhn had a reasonable expectation to be free from excessive and abusive phone calls at her place of work. Consequently, because the Court cannot find as a matter of law that the representative's actions were not "highly offensive to a reasonable person", ACT's Motion in that respect must be denied.

#### 4. Punitive Damages

■ ACT seeks summary judgment on Kuhn's request for punitive damages on the grounds that Kuhn has neither alleged, nor presented evidence to establish oppression or malice. In Nevada, punitive damages may be awarded "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied." Nev.Rev.Stat. § 42.005.1. Contrary to ACT's assertions, Kuhn clearly alleges in her Second Amended Complaint (# 33) that ACT engaged in "outrageous and malicious conduct" in its debt collection efforts. Plaintiff's Second Amended Complaint (# 33), at 11. Furthermore, the Court finds that Plaintiff has presented sufficient evidence from which the trier of fact could conclude that ACT's conduct was malicious, thus sustaining an award of punitive damages. Accordingly, ACT's Motion on this issue must also be denied.

#### C. Kuhn's Motion for Partial Summary Judgment (# 41)

In this Motion, Kuhn seeks summary judgment on several of her FDCPA claims.

#### 1. Failure to provide required validation notice.

■ On April 26, 1993, ACT mailed Kuhn a dunning notice. *See* Plaintiff's Motion for Partial Summary Judgment (# 41), Ex. "2". Kuhn alleges that this correspondence violated the FDCPA because it failed to include the specific notices required by FDCPA § 1692g(a)(4) and (5).[4] In response, ACT

---

**4.** Section 1692g provides in relevant part:
(a) Within five days after the initial communication with a consumer in connection with the

collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer

acknowledges that they sent the letter and that it fails to include the proper notices, but argues that the omission is irrelevant because Kuhn's pleadings indicate she never received the letter or never opened it. Thus, ACT argues, because Kuhn could not have been misled by the defective letter, any violation of the FDCPA is "de minimis".

As ACT has acknowledged that they sent the letter and that the letter fails to include all the disclosures required by § 1692g(a), the Court finds that Kuhn should be granted summary judgment in her favor on this issue. *See Cacace v. Lucas,* 775 F.Supp. 502, 505 (D.Conn.1990) ("As the FDCPA is a strict liability statute, proof of one violation is sufficient to support summary judgment for the Plaintiff."). ACT's argument that Kuhn never received the letter or did not read it is of no moment on the issue of whether a violation has occurred. The language of § 1692g is clear that a notice of debt must contain the enumerated disclosures; it does not require that a debtor must actually be misled by a failure to do so. ACT's failure to include the required information thus violated the FDCPA. Summary judgment in Kuhn's favor on the issue of liability is therefore appropriate.[5]

### 2. Threat of collection litigation.

■ On or about October 4, 1993, ACT sent Kuhn another letter ("NTC4"). *See*

Plaintiff's Motion for Partial Summary Judgment (# 41), Ex. "4".[6]  In this letter, ACT informed Kuhn that they were referring her account to their attorney "for legal action" because she had failed to make satisfactory payment arrangements. *Id.* Kuhn argues that this letter violates § 1692e(5)[7] of the FDCPA in that it threatens legal action against Kuhn when none could be taken because ACT did not have proper authorization as is required by their "Collection Agreement" with the creditor, Mitchell Sweet and Associates ("Mitchell Sweet"). In response, ACT argues that it did have proper written authorization to institute legal action against Kuhn, and they submit a document which they argue supports this contention.

It is clear from the face of the NTC4 letter that ACT is threatening Kuhn with "legal action" for failing to make proper payment arrangements on the debt. Further, it is also clear that before ACT could properly commence any legal action against Kuhn, it would have had to obtain written authorization from Mitchell Sweet. *See* "Collection Agreement", attached as Exhibit "6" to Plaintiff's Motion for Partial Summary Judgment (# 41) ("[ACT] is expressly authorized to consult with attorneys on [Mitchell Sweet's] behalf provided that legal action shall not be commenced unless expressly authorized by [Mitchell Sweet] in advance and in writing.") Without this authorization, ACT would be in no position to take legal

has paid the debt, send the consumer a written notice containing—

\* \* \* \* \* \*

(4) a statement that if the consumer notifies the debt collector in writing within the thirty day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of the judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector, and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**5.** Whether Kuhn actually received the notice is irrelevant on the issue of whether the FDCPA was violated, but it may be relevant on the issue of any damages that are awarded for this violation.

**6.** The NTC4 letter contained in Exhibit "4" is actually a copy of the original letter and is dated February 12, 1994. It was presented to Plaintiff pursuant to a discovery request. Defendant's President, Dale Van Dellen, acknowledged that the NTC4 letter contained in Exhibit "4" represented the form of the original dunning notice sent on October 4, 1993. *See* Excerpts of Deposition of Dale Van Dellen, attached as Exhibit "4" to Plaintiff's Reply (# 50).

**7.** § 1692e provides:

A debt collector may not use any false, deceptive or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\* \* \* \* \* \*

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

action against Kuhn and any threats to do so by ACT would constitute a violation of § 1692e(5). Thus, the issue becomes whether ACT had such authorization.

As proof that they received written authorization prior to threatening legal action on October 4, 1993, ACT proffers a document on ACT letterhead dated May 13, 1993 (the "Authorization"), which was allegedly submitted to Mitchell Sweet during that same month and requests authorization to sue Kuhn on the debt. *See* Defendant's Opposition (# 48), Ex. "E". The Authorization contains the following language: "WE CONFIRM ASSIGNMENT OF THIS ACCOUNT TO ACCOUNT CONTROL TECHNOLOGY AND SUIT AUTHORIZATION IS HEREBY." A check-mark is placed in a spot marked "APPROVED" which follows this language and the document is contains the illegible signature of someone with the title of "manager", but the signature is not dated. Furthermore, the document provides the following summary with respect to the status of Kuhn's account:

| | |
|---|---|
| ASSIGNED AMOUNT | 1100.70 |
| INTEREST | 221.10 |
| LATE CHARGE | 0.00 |
| COLLECTION FEE | 317.63 |
| RECEIVED | 1100.00 |
| BALANCE OWING | 539.73 |

It appears from the record that all correspondence from ACT to Kuhn in this matter contained similar summaries of the status of Kuhn's account. *See e.g.*, Plaintiff's Reply (# 50), Exs. "2", "7", "9", and "11".

The Court finds that the Authorization submitted by ACT does not create a genuine issue of material fact sufficient to defeat summary judgment. As Kuhn points out, it is simply impossible that the Authorization was generated in May 1993. The account summary portion of the Authorization indicates that Kuhn received a credit for a payment she made to ACT in the amount of $1,100.00. ACT has acknowledged, however,

that this payment was not received by them until November 16, 1993—*over six months after the Authorization was allegedly sent to Mitchell Sweet.* Indeed, at the hearing conducted October 7, 1994, counsel for Defendant ACT clarified that the purported letter of authorization, Exhibit "E", is in fact a computer reproduction and not an actual copy of the authorization to commence legal action.

Similarly, the account summary also indicates that the interest accrued on Kuhn's account at the time the Authorization was generated was $221.10. ACT, however, sent Kuhn another dunning notice dated December 1, 1993, which indicated that the accrued interest at that time was only $210.79. The Court is unable to conceive of how the accrued interest in a document supposedly generated in May 1993, will indicate a greater amount of interest owed than one dated December 1, 1993. Unless, of course, the Authorization was actually generated sometime after December 1, 1993.

Consequently, the Court finds that the dubious nature of the Authorization is insufficient to create a genuine issue of material fact. As ACT has presented no other evidence that it had written authorization from Mitchell Sweet prior to threatening Kuhn with legal action, the Court further finds that ACT violated § 1692e(5) of the FDCPA. Kuhn's Motion for Summary Judgment on this issue will, therefore, be granted.

### 3. Unlicensed collection efforts.

Kuhn argues that ACT violated the FDCPA by engaging in collection activities within the State of Nevada without a license. Prior to October 1, 1993, Nev.Rev.Stat. § 649.075 required non-resident collection agencies to either be licensed by the state regulatory authorities, or to obtain a letter of exemption from the division.[8] ACT concedes

---

**8.** Effective October 1, 1993, the Nevada legislature added subsection 2 to § 649.075, which provides, in relevant part:

    2. A person is not required to obtain a license if:

      (a) The collection agency he works for is located outside of this state;

      (b) His activities in this state are limited to the collection of claims from residents of this state on behalf of residents of another state; and

      (c) His contact with persons in this state is limited to interstate communications by telephone, mail or facsimile.

that it neither had a license nor an exemption at the time it was attempting to collect the debt from Kuhn.

Kuhn argues that ACT's unlicensed collection efforts violated the FDCPA's prohibitions against: 1) threatening to take any action that cannot legally be taken, 15 U.S.C. § 1692e(5); 2) using false representations or deceptive means to collect or attempt to collect any debt or to obtain any information concerning a consumer, 15 U.S.C. § 1692e(10); and 3) using unfair or unconscionable means to collect or attempt to collect any debt, 15 U.S.C. § 1692f.

Plaintiff argues that ACT's collection efforts prior to October 1, 1993, unlawfully threatened action that could not legally be taken in light of ACT's failure to obtain a license or an exemption to operate within the State of Nevada. In support of her argument, Kuhn cites the decision in *Gaetano v. PAYCO of Wisconsin, Inc.,* 774 F.Supp. 1404 (D.Conn.1990), which found that the collection agency in that case had violated various provisions of the FDCPA when it engaged in several debt collection practices in the State of Connecticut without a license. *Id.* at 1414–16.

In opposition, ACT neither directly addresses Kuhn's argument nor offers any authority to contradict *Gaetano.* Instead, ACT asserts that any pre-October 1993 activities "could not have been deceptive, or misleading, since the Plaintiff was unaware of such activities." Defendant's Opposition (# 48), at 8. This argument lacks merit, however, because ACT's own collection records indicate that ACT contacted Plaintiff prior to October 1, 1993. *See* Plaintiff's Motion for Summary Judgment (# 41), Ex. "3". ACT also erroneously contends that they were not required to obtain a license because they are exempted from state regulation by 34 C.F.R. § 682.410(b)(9). This argument, however, is unpersuasive because the Court finds that 34 C.F.R. § 682.410(b)(9) is inapplicable because ACT is not a guaranty agency.

Here, as in *Gaetano,* state law prior to October 1, 1993, prohibited ACT from acting as a collection agency without being licensed by the proper state authority. Thus, the Court finds that ACT's unlicensed collection actions undertaken prior to October 1, 1993, constituted a violation of § 1692e(5) in that they threatened to take action that legally could not be taken. *Gaetano,* 774 F.Supp. at 1415. The Court further finds that ACT's actions were "unfair or unconscionable" in violation of § 1692f because the failure to obtain a license "deprived [Kuhn] of her right as a consumer debtor residing within the state to have the defendant's qualifications as a collection agency reviewed by state authorities." *Id.* at 1415 n. 8; *see also* Nev.Rev. Stat. § 649.095. Finally, the Court finds that ACT's actions prior to October 1, 1993, were deceptive and in violation of § 1692e(10) because ACT engaged in collection activities within the State of Nevada when they were prohibited from doing so by Nevada law. *See* 774 F.Supp. at 1415. Therefore, summary judgment will be granted in Kuhn's favor on these claims.

### 4. Repeated phone calls.

■■■ On November 9, 1993, Kuhn was contacted at her place of employment by one of ACT's collection agents, Danny Dorman ("Dorman"). Kuhn argues that the series of calls made to her that day were in violation of 15 U.S.C. § 1692d(5) which prohibits causing a telephone to ring or engaging any person in a telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number. Kuhn claims that ACT called her twice after she hung up on Dorman, thus violating § 1692d(5). *See Bingham v. Collection Bureau, Inc.,* 505 F.Supp. 864 (D.N.D. 1981) (finding that collector's immediately recalling debtor after debtor hung up constituted harassment).

ACT argues that summary judgment is inappropriate because Dorman's deposition testimony "disputes the substance and nature of those calls." Defendant's Opposition (# 48), at 10. ACT's argument misses the point. At least on this issue, Kuhn is not

---

Thus, it appears that after October 1, 1993, ACT would not have been required to obtain a license for its collection activities. Prior to that date, however, ACT was required to either obtain a license or an exemption to legally conduct such activities within the State of Nevada.

arguing that the "substance and nature" of those calls constituted harassment; rather, she is arguing that the act of calling back itself constituted the harassment. The content or substance of the calls is irrelevant on this issue.

Kuhn has presented ACT's long distance phone records which indicate that a total of six calls were placed by ACT to Kuhn's place of employment within a 24 minute period on November 9, 1993. *See* Plaintiff's Motion for Partial Summary Judgment (# 41), Ex. "3". These records indicate that the calls occurred at 2:07 p.m., 2:18 p.m., 2:24 p.m., 2:25 p.m., 2:29 p.m., and 2:31 p.m. Kuhn also presents a copy of ACT's own collection notes with regard her account which contains an entry by Dorman which indicates that he spoke with Kuhn at 2:26 p.m. on November 9, 1993, and that she hung up on him at that time. *See id.*, Ex. "5". The phone records clearly indicate that two more calls were placed by ACT at 2:29 and 2:31 p.m. The Court thus finds that ACT harassed Kuhn in violation § 1692d(5) when, after Kuhn hung up on Dorman, ACT recalled Kuhn's place of employment two additional times within a 5 minute period. *See Bingham,* 505 F.Supp. at 873.

    5.   Contact with Kuhn after being informed she was represented by counsel.

■ Kuhn asserts that on November 30, 1993, an ACT collector, Dave Bartel ("Bartel") telephoned her at her place of employment, at which time Kuhn referred him to her attorney and provided the attorney's phone number. *See* Plaintiff's Motion for Partial Summary Judgment (# 41), Exs. "5", "7". On December 1, 1993, ACT sent another dunning notice to Kuhn. *See id.*, Exs. "5", "8". Kuhn argues that sending this notice violated 15 U.S.C. § 1692c(a)(2) which prohibits communicating with a consumer in connection with the collection of a debt once the collector knows the consumer is represented by an attorney with respect to such debt.

ACT does not dispute that on November 30, 1993, Kuhn advised Bartel that she was represented by counsel and that on Decem-

ber 1, 1993, another notice was sent. Instead, ACT argues that summary judgment should not be granted because "the collector who authorized the mailing did not know that Plaintiff was represented by a specific attorney with respect to this specific debt when he caused the notice to be mailed." Presumably, ACT is referring to the fact that Dorman authorized the sending on the notice prior to the time Bartel was informed that Kuhn was represented by counsel. This argument, however, is unconvincing.

The evidence indicates that Dorman requested that the notice be sent at 10:50 a.m. on November 30, 1993, while Bartel was not informed that Kuhn was represented by counsel until 10:57 a.m. on the same day. *See* Plaintiff's Motion for Partial Summary Judgment (# 14), Ex. "5". Bartel's deposition testimony indicates, however, that both he and Dorman were working on Kuhn's account that day, and that after speaking with Kuhn, Bartel informed Dorman that Kuhn was represented by counsel. *See id.*, Ex. "7". Thus, since the notice was not actually sent until the next day, Dorman, who was aware of both the notice and the fact that Kuhn was represented by counsel, had one full day to cancel the notice or send it to Kuhn's counsel. He did neither. Accordingly, the Court finds that the notice sent on December 1, 1993, violated § 1692c(a)(2).

**D.  Motion for Leave to Amend the Defendant's Answer to Plaintiff's Second Amended Complaint (# 51)**

■ This Motion seeks to amend ACT's Answer to Plaintiff's Second Amended Complaint by adding a statute of limitations defense. Having read and considered ACT's Motion, and good cause appearing, the Court finds that there is no merit to ACT's statute of limitations argument and will therefore not allow this futile amendment. *See Smith v. Commanding Officer, Air Force Accounting,* 555 F.2d 234, 235 (9th Cir.1977).

IT IS THEREFORE ORDERED THAT Plaintiff's Motion to Dismiss Counterclaim (# 38) is Granted.

IT IS FURTHER ORDERED THAT Defendant's Motion for Partial Summary Judgment (# 39) is Granted to the extent that Plaintiff may not maintain her invasion of

privacy cause of action based upon her allegations of a public disclosure of private facts, and that any award of statutory damages in this case is limited to total of $1,000.00.

IT IS FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment (# 39) is Denied as to Plaintiff's invasion of privacy claim based upon an unreasonable intrusion upon the seclusion of another and her claim for punitive damages.

IT IS FURTHER ORDERED THAT, in accordance with this Order, Plaintiff's Motion for Partial Summary Judgment (# 41) is Granted.

IT IS FURTHER ORDERED THAT Defendant's Motion for Leave to Amend the Defendant's Answer to Plaintiff's Second Amended Complaint By Adding an Additional Affirmative Defense and Motion for Leave to File the Foregoing Motion After Time Set for Filing of Motions Under Rule 15, FRCP Pursuant to the Court's Scheduling Order (# 51) is Denied.

IT IS FURTHER ORDERED that this matter is hereby referred to the Honorable Roger L. Hunt for scheduling a settlement conference at the earliest convenient date.

IT IS FURTHER ORDERED that the parties to this action shall, on or before November 29, 1994, file a Joint Pretrial Order in full compliance with Local Rule 190–3 and 190–4.