Rebecca H. DITTY, et al., Plaintiffs,

v.

CHECK RITE, LTD., et al., Defendants.

No. 2:95–CV–430C.

United States District Court,
D. Utah,
Central Division.

June 24, 1998.

Lester A. Perry, Salt Lake City, UT, for Plaintiffs.

Daniel P. Shapiro, Chicago, IL, Mark O. Morris & Paul C. Droz, Salt Lake City, UT, for Defendants.

## ORDER

CAMPBELL, District Judge.

As an initial matter, the court hereby partially withdraws its reference to United States Magistrate Judge Samuel Alba so that it may reach the merits of the plaintiffs' motion to certify a class, to approve class notices, and to require the defendants to identify class members; all other nondispositive matters remain under Judge Alba's jurisdiction pursuant to this court's original order of reference. The court also notes that, having received the initial briefing, a first set of supplementary briefs and a second set of supplementary briefs from each of the parties, as well as a third supplemental filing from the plaintiff alone, oral argument would not materially further its understanding of the issues presented by the plaintiffs' motion. The court therefore enters the following order based upon the memoranda of the parties and applicable legal authorities alone. Finally, because the facts of this case have already been extensively detailed in this court's order of August 11, 1997, *Ditty v. CheckRite, Ltd. Inc.*, 973 F.Supp. 1320 (D.Utah 1997), the

court will not repeat them here except as necessary to explain the its decision.

### Discussion

I. *The Requirements of Rule 23(a).*

Under Rule 23(a), the following showing must be made: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *Reed v. Bowen,* 849 F.2d 1307, 1309 (10th Cir.1988). The party seeking certification bears the burden of establishing that certification is proper. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993).

A. *Impracticability of Joinder.*

The first question under Rule 23 is whether "the class is so numerous that joinder of all members is impracticable." Fed. R.Civ.P. 23(a)(1). To satisfy this requirement, the plaintiffs need not show that joinder of all members is impossible, only that it is impracticable. *O'Neil v. Appel,* 165 F.R.D. 479, 488 (W.D.Mich.1996). Nor is it necessary that the plaintiffs identify the exact number of class members involved; courts have often used common sense assumptions to support a finding of numerosity. *Zeidman v. J. Ray McDermott & Co., Inc.,* 651 F.2d 1030, 1039 (5th Cir.1981).

In this case, the plaintiffs' best estimate of the number of members in the class is based upon DeLoney's deposition testimony that he caused to be sent approximately 50 to 75 "covenant not to sue" letters per day, or approximately 15,000 such letters per year. The exact number is not known at this point only because the defendants have refused to make available to the plaintiffs that portion of their computer records which would identify each and every recipient of a "covenant not to sue" letter. Nevertheless, common sense dictates that, whatever the exact figure, the putative class is too large for joinder of each member to be practicable.

There will be time enough at a later date to determine the exact size of the putative class from the defendants' records.

### B. *Commonality.*

■ In order to demonstrate commonality, the plaintiffs must also show that there are questions of law or fact common to the class. On the record before the court there can be no doubt that there are such common issues; whether these common issues predominate over other issues is a matter which the court will take up in its discussion of the Rule 23(b)(3) requirements below. Suffice it to say here that every member of the putative class received from the defendants a letter containing the "covenant not to sue" language that this court has already declared to be a violation of the FDCPA. No more is needed to establish the "common nucleus of operative fact" required by Fed.R.Civ.P. 23(a)(2). *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992). *See also, Haroco, Inc. v. American Nat. Bank & Trust Co.,* 121 F.R.D. 664, 669 (N.D.Ill.1988) (Claims arising out of standard documents present a "classic case for treatment as a class action."); *Gammon v. GC Services Ltd. Partnership,* 162 F.R.D. 313, 317 n. 4 (N.D.Ill.1995) (finding that mailing of standard debt collection letter to all members of the proposed class satisfies the commonality requirement); *Newman v. CheckRite California, Inc.,* Civ. No. S–93–1557 LKK, (E.D.Cal. Aug. 2, 1996).

### C. *Typicality.*

■ "The question of typicality ... is closely related to the preceding question of commonality." *Rosario,* 963 F.2d at 1018. A named plaintiff's claim is typical if it arises from " 'the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory.' " *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983) (quoting H. Newberg, *Class Actions,* § 115(b) at 185 (1977)). In this case, each named plaintiff's claim is based upon the same fact pattern, receipt of a "covenant not to sue" letter, as every other member of the class, and each named plaintiff advances the same legal theory in support of the de-

fendants liability, that these "covenant not to sue" letters violate the FDCPA. It is these two elements, "the defendant's conduct and the plaintiff's legal theory," *Rosario,* 963 F.2d at 1018, that the named plaintiffs must, and do, share with the other members of the class to satisfy the demand of Rule 23(a)(3). Where, as here, these two factors favor a finding of typicality, minor factual variations will not defeat the formation of the class. *Brewer v. Friedman,* 152 F.R.D. 142, 144 (N.D.Ill.1993).

### D. *Adequacy of Representation.*

■ Rule 23(a)(4) requires that the named plaintiffs provide fair and adequate protection for the interests of the class. Two factors are important in that determination: (1) the class attorney's qualifications, experience, and ability to conduct the litigation and (2) whether the named plaintiffs have interests antagonistic to those of the class. *Radell v. Towers Perrin,* 172 F.R.D. 317, 320 (N.D.Ill.1997). Although some courts have inquired into the named plaintiffs' understanding of the lawsuit or their character, that factor is generally given little weight. *See, e.g., Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 366, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) (finding plaintiff an adequate class representative even though "she did not understand the complaint at all, ... could not explain the statements made in the complaint, ... had a very small degree of knowledge as to what the lawsuit was about, ... did not know any of the defendants by name; ...did not know the nature of their alleged misconduct, and in fact ... had merely relied on what her son-in-law had explained to her about the facts in the case."); *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 2251 & n. 20, 138 L.Ed.2d 689 (1997) (looking solely to competence of counsel and structural conflicts between named plaintiffs and other class members under Rule 23(a)(4)).

■ As to the qualifications of the plaintiffs' counsel, Mr. Perry is an experienced class action attorney who has represented plaintiff classes on several occasions: *Bellows v. Collection Management Agency, Inc.,* Civ. No. 93–CV–1037J; *Perry v. Countrywide*

*Mortgage,* Civ. No. 2:94–CV–1091G; *Pickering v. Bonneville Billing and Collections, Inc.,* Civ. No. 1:95–CV–125B; and *Payne v. Quick Loan, Inc.,* Civ No. 96–090–2178. Counsel for plaintiffs also indicates that he has had no difficulty in the past advancing the costs of class action litigation on behalf of his clients and that he intends to advance funding in this case as well. Finally, the court notes that plaintiffs' counsel has demonstrated his legal ability in this case by obtaining partial summary judgment in favor of his clients. The court therefore finds Mr. Perry's legal abilities adequate to the task before him.

United States Magistrate Judge Samuel Alba has previously heard, and rejected, argument from the defendants that Mr. Perry engaged in conduct that required his disqualification from this proceeding. *See* Sept. 22, 1997 Minute Entry. There is nothing in the allegations contained in the defendants' second set of supplemental briefs which would lead this court to a different conclusion than that reached by Judge Alba. Specifically, the court finds nothing improper in the fact that Mr. Perry has filed additional class actions against the defendants because of their allegedly continued use of a form dunning letter which this court has already declared illegal. Given this court's ruling that injunctive relief is not available under the FDCPA, successive class actions provide the only remedy to plaintiffs who believe they have been the victims of ongoing illegal behavior by the defendants.

As to the named plaintiffs themselves, the defendants' attacks on their integrity and personal resources are unavailing. The Tenth Circuit long ago concluded that the personal finances of class action plaintiffs are not even a relevant inquiry where the court, as here, is otherwise satisfied that the costs of notice will be met. *Sanderson v. Winner,* 507 F.2d 477, 479–80 (10th Cir.1974). And even if there is some hint of personal dishonesty among the plaintiffs, a question which the court does not reach here, that provides the defendants with impeachment material and no more. The only relevant inquiry where the named plaintiffs are concerned is whether they possess some interest that is antagonistic to other members of the class. The court can discern no such conflict from the record before it.

The court therefore concludes that the plaintiffs have satisfied all the requirements of Rule 23(a).

## II. *Rule 23(b)(3).*

■ Because they seek certification under Rule 23(b)(3), plaintiffs must also show that: (1) the questions of law or fact common to the members of the class predominate over those questions affecting individual members only, and (2) a class action is superior to other available methods for fair and efficient adjudication of the controversy. *Amchem,* 521 U.S. 591, 117 S.Ct.at 2245–46.[1]

### A. *Predominance of Common Issues.*

■ "[I]n determining the predominance of common over individual questions, the critical test is 'whether there is "material variation" ' " in the defendants' posture towards the different plaintiffs. *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir.1968). In this case, the inquiry is greatly simplified because defendant DeLoney has testified that only two variant forms of the "covenant not to sue" letter were ever used. The letter received by plaintiff Ditty (hereafter "Letter A") reads in relevant part as follows:

> We have authority to settle this matter by offering you this contract for a "Covenant Not To Sue." This is an Offer of Settlement. This is NOT a demand for payment and you are NOT required to pay the settlement amount. You may accept or reject this offer .... To accept this Offer, your payment of the Settlement Amount must reach us within ten days from the date of this letter. If it does, CheckRite and the merchant will be bound by their promise not to sue you.

(Letter A, attached as Exhibit B to Plaintiffs' Supp. Mem.) The variant form of the letter received by plaintiff Lloyd (hereafter re-

1. Plaintiffs initially sought certification of additional subclasses for injunctive and declaratory relief under Rule 23(b)(2), but have since withdrawn that request.

ferred to as Letter B), reads in relevant part as follows:

> Our client has authorized us to offer you this out of court settlement and contract for their "Covenant Not To Sue." If your payment reaches us within ten days, CheckRite and the merchant named below will be bound by their promise not to sue you .... Timely payment of the settlement amount constitutes acceptance by performance .... This is NOT a demand for payment and you are NOT required to pay the Settlement Amount. This is an Offer of Settlement. You may accept or reject this offer.

(Letter B, attached as Exhibit C to Plaintiffs' Supp. Mem.) Although there are some minor differences between the two letters, at their core there is no *material* difference at all. Both Letter A and Letter B represent virtually identical efforts to obtain from the plaintiffs an illegal "covenant not to sue" fee.

 The other factual variations identified by the defendants fare no better and may be disposed of in short order. Class certification is not properly withheld merely because there may be some variation in damages among members of the plaintiff class. *Gold Strike Stamp Co. v. Christensen,* 436 F.2d 791, 798 (10th Cir.1970) ("The fact that there may have to be individual examinations on the issue of damages has never been held ... a bar to class actions."); *Brewer,* 152 F.R.D. at 144 (collecting cases). Nor is class certification properly withheld because some plaintiffs read the "covenant not to sue" letter and some did not, or because some paid the requested fee and other did not. Neither of these issues is material in determining an FDCPA violation. The FDCPA is a strict liability statute and it is the sending of the illegal letter that creates liability rather than any necessary response on the part of the debtor. *Kuhn v. Account Control Technology, Inc.,* 865 F.Supp. 1443, 1450 (D.Nev. 1994).

Given the lack of material variation among the members of the class, the court therefore finds that the common issues predominate. *See also Newman,* Civ. No. S–93–1557 LKK at 10–11.

B. *Superiority of Class Action as a Means of Adjudication.*

 The matters pertinent to these findings include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

The defendants' attack in this area focuses primarily on the fact that the recovery to plaintiffs in individual actions is potentially much greater than that available to plaintiffs if they proceed as a class. In support of this proposition, defendants quote at length from the decision of *Mace v. Van Ru Credit Corp.,* 94 C 7450, 1995 WL 549088 (N.D.Ill.1995), denying certification of a FDCPA class action. Since the briefing in this matter was completed, however, the Seventh Circuit has vacated the decision in *Mace* specifically on the ground that the smaller recoveries available to the class should not bar a class action:

> [W]e believe that a *de minimis* recovery (in monetary terms) should not automatically bar a class action. The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries in to something worth someone's (usually an attorney's) labor.

> True, the FDCPA allows for individual recoveries of up to $1000. But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case. These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be

more appropriate for pursuing the FDCPA's objectives.

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir.1997). The court finds the reasoning of the Seventh Circuit persuasive. The individual plaintiffs are unlikely ever to sue because, at the level of rational economic calculation, the potential costs associated with individual lawsuits greatly exceed the potential rewards. Therefore, a class action suit is by far the most sensible means of aggregating these small individual claims in one proceeding.

Assuming that the propriety of certification was a close question, the Tenth Circuit's admonition in *Esplin v. Hirschi* would weigh heavily in the balance: "if there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the court of the trial so require." *Esplin*, 402 F.2d at 99. But, in point of fact, the propriety of certification does not appear to be a close question on the record now before the court. The plaintiffs have prevailed strongly on each and every factor under Rule 23(a) and Rule 23(b)(3); the court therefore believes that class certification represents a sound exercise of its discretion in this matter.

III. *Definition of the Class.*

█ The court finds, however, that the class definition proposed by the plaintiffs is somewhat lacking insofar as it incorporates elements which are legally immaterial and fails to incorporate elements which are material.[2] Therefore, pursuant to its authority under Rule 23(c), the court now orders the following class definition:

> All persons, on whose claims the statute of limitations has not run, who were sent, or who will be sent during the pendency of this litigation, a letter from DeLoney & Associates containing a "covenant not to

sue" offer identical or similar to that made to the named plaintiffs.

The plaintiffs' proposal that the class be limited to those consumers from whom the defendants actually collected, or attempted to collect, the "covenant not to sue" fee is rejected. No reliance by the plaintiffs is necessary to make out a violation of the statute and therefore any such limitation would be irrelevant. *Kuhn*, 865 F.Supp. at 1450. Any reference to CheckRite in the definition of the class has been removed because this court has already ruled that, as a matter of law, CheckRite did not violate the FDCPA with its own dunning letters. *Ditty*, 973 F.Supp. at 1328. Finally, to assist in administration of the class, the court has chosen to limit the class to those consumers on whose claim the statute of limitations has not run. Because the court retains plenary power to modify the class definition, or rescind the class altogether, at any time prior to judgment, the parties are free to move for modifications to the class definition should subsequent events reveal that the definition is unworkable. Fed.R.Civ.P. 23(c)(1) ("An order under this subdivision may be conditional; and may be altered or amended before the decision on the merits."); *Buycks–Roberson v. Citibank Federal Savings Bank*, 162 F.R.D. 322, 328–29 (N.D.Ill.1995) ("This Court retains the power to modify the class definition at any time before a final judgment on the merits, if the evidence or the legal principles governing this case establishes that the class definition is too broad.").

IV. *Notice to Class Members.*

In light of the current posture of the case, the court cannot approve the class certification notice as originally submitted by plaintiffs. The parties are directed to meet and confer in good faith for the purpose of submitting to this court an agreed upon form for the class notice that incorporates the rele-

---

**2.** Plaintiffs have proposed two variant class definitions to date:

 (1) All consumers from whom the Defendants, DeLoney and Associates and/or CheckRite, collected, at any time between May 6, 1994, and the present date, a covenant not to sue fee in connection with the collection of dishonored checks written by consumers.

 (2) All consumers from whom the Defendants, DeLoney and Associates and/or CheckRite, attempted to collect or collected, at any time between May 6, 1994, and the present date [the date of the order certifying the class], a covenant not to sue fee in connection with the collection of dishonored checks written by the consumers.

vant rulings from this decision. The parties are to submit this proposed notice within ten days from the date of this order. In the event that the parties are unable to agree, the plaintiffs are directed to submit to this court a proposed notice within ten days from the date of this order and the defendants may register their objections within three days thereafter. Plaintiff may thereafter have two days to respond to any of the defendants' objections. Copies of all documents relating to class notice are to be served upon the parties and filed with the court *by hand*. No extensions of time will be given for this purpose without a written motion that identifies, with specificity, the reasons constituting good cause for the request.

## V. *Class Consolidation.*

In order to achieve the maximum advantage from the class action procedure, the court now orders all parties to show cause why the cases of *Hoepner v. DeLoney*, 2:98–CV–136C, and *Stout v. DeLoney*, 2:98–CV–173B, should not be consolidated with this proceeding, with or without modification of the class definition now approved by the court. The parties are directed to meet and confer in good faith for the purpose of submitting to this court a stipulated order regarding consolidation within twenty days from the date of this order. In the event that the parties are unable to agree, the plaintiffs are directed to submit a response to the order to show cause within twenty days from the date of this order. The defendants may register their objections within fifteen days thereafter. Copies of all documents relating to consolidation are to be served upon the parties and filed with the court *by hand*. No extensions of time will be given for this purpose without a written motion that identifies, with specificity, the reasons constituting good cause for the request.

## VI. *Appointment of Class Administrator.*

As none of the parties appears to have any objections to the appointment of Mr. Duane Gillman as class administrator, the court is prepared to approve Mr. Gillman's involvement with this case. As a matter of judicial administration, however, the court must ask the plaintiff to make a formal motion, stipulated or otherwise, for Mr. Gillman's appointment. The ninth page of a supplemental memorandum in support of plaintiffs' motion for class certification (effectively a sur-surreply) is not the proper place to move for appointment of a class administrator for the first time.

## VII. *Remand to Magistrate for Resolution of Discovery Matters.*

Upon completion of the certification process and appointment of an administrator, all future nondispositive matters are to be directed to United States Magistrate Samuel Alba. Judge Alba will shortly issue an order for accelerated briefing and hearing on any outstanding discovery matters relating to certification of the class.

## Order

To summarize, the court has ruled as followed:

1. Plaintiffs' motion is GRANTED IN PART AND DENIED IN PART.

2. The court has found that class certification is proper in the present case, but has modified the definition of the class as proposed by the plaintiffs.

3. The court has disapproved plaintiffs' proposed class notice and required the parties to submit a new proposed notice within ten days from the date of this order. The court has provided a briefing schedule in the event the parties are unable to agree.

4. The court has, *sua sponte*, ordered the parties to show cause why the cases of *Hoepner v. DeLoney*, 2:98–CV–136C, and *Stout v. DeLoney*, 2:98–CV–173B, should not be consolidated with this proceeding. The court has directed the parties to submit a stipulated response, if possible, and has provided a briefing schedule in the event that the parties are unable to agree.

5. The court has indicated its willingness to appoint Mr. Duane Gillman as class administrator, but defers a ruling on this issue until a formal motion is made by the plaintiffs.

6. Once these matters have been completed, the parties are directed to file all future nondispositive motions with United States Magistrate Judge Samuel Alba pursuant to this court's original order of reference, including any discovery issues pertaining to the identification of class members. Judge Alba will issue an accelerated scheduling order shortly.